09-0732-cr (L), 09-0821-cr (con), 09-0867-cr (con), 09-0847-cr (con)
United States v. Nicolo, et al.

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1.  When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order").  A party citing a summary order must serve a copy of it on any party not represented by counsel.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 4th day of May, two thousand and eleven.

PRESENT:

> JOSÉ A. CABRANES,
> DENNY CHIN,
> > *Circuit Judges*,
> PAUL A. CROTTY,
> > *District Judge*.[*]

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,

> *Appellee*,

v.                                      Nos. 09-0732-cr (L),
                                             09-0821-cr (con),
                                             09-0867-cr (con),
                                             09-0847-cr (con)

JOHN NICOLO, CHARLES SCHWAB, DAVID FINNMAN, and
CONSTANCE ROEDER,

> *Defendants-Appellants*.[**]

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

---

[*] The Honorable Paul A. Crotty, of the United States Court for the Southern District of New York, sitting by designation.

[**] The Clerk of Court is directed to amend the caption to read as shown above.

1

FOR APPELLANTS:          CRAIG D. CHARTIER (Gerald W. Dibble, *on the brief*), Dibble & Miller, P.C., Rochester, NY, *for appellant* John Nicolo.

MICHELE HAUSER, New York, NY, *for appellant* Charles Schwab.

MATTHEW R. LEMBKE, Cerulli, Massare & Lembke, Rochester, NY, *for appellant* David Finnman.

PAUL DEROHANNESIAN II, DerOhannesian & DerOhannesian, Albany, NY, *for appellant* Constance Roeder.

FOR APPELLEE:          RICHARD A. RESNICK, Assistant United States Attorney (William J. Hochul, Jr., United States Attorney, *on the brief*), Office of the United States Attorney, Western District of New York, Rochester, NY.

Appeal from judgments of conviction entered in the United States District Court for the Western District of New York (David G. Larimer, *Judge*).

**UPON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court be **AFFIRMED** with respect to John Nicolo, David Finnman, and Constance Roeder, and that Charles Schwab's appeal be **DISMISSED**.

On March 14, 2007, a 71-count indictment was returned in the Western District of New York against John Nicolo, Charles Schwab, David Finnman, and Constance Roeder (jointly, "defendants"). According to the government, these four defendants were involved in various conspiracies to (a) commit honest services fraud, (b) launder money, and (c) defraud the Internal Revenue Service.

The basic theory of the government's case is that Nicolo, an independent real property appraisal consultant, would routinely bribe Charles Schwab, the former Town Assessor for the Town of Greece, New York, in order to secure favorable tax assessments for the relevant real estate holdings of his clients. Finnman was a long-time employee of the Eastman Kodak company (and later, Global Crossing Telecommunications, Inc.), whose duties included contracting outside businesses to help his employer reduce its tax assessments on properties located throughout the United States. Finnman arranged for his employers to hire Nicolo to prepare appraisals on their behalf; in return, he received kickbacks from Nicolo. Additionally, the government alleged that Nicolo and his wife, Roeder, conspired to defraud the IRS and filed several false tax returns.

Schwab pleaded guilty to conspiring to commit mail and wire fraud, and also honest services fraud. The other three defendants went to trial. Nicolo was convicted of multiple counts of conspiracy, honest services fraud, mail fraud, wire fraud, money laundering conspiracy, money

2

laundering, filing a false tax return, and aiding and assisting in the preparation of a false tax return. Finnman was convicted of conspiracy, honest services fraud, and money laundering. Finally, Roeder was convicted of conspiracy and filing a false tax return.

The appeals of all four defendants have been consolidated for our review. Assuming the parties' familiarity with the underlying facts and procedural history of the case, we address the claims of each defendant in turn.

*(1) John Nicolo*
Nicolo raises several different challenges to his conviction.

(a) Motion for a continuance

Nicolo claims that the District Court violated his constitutional rights by denying his motion for a months-long continuance on the basis of health impairments. Shortly before trial, Nicolo asked the District Court to postpone the trial from February to May on the grounds that the cold weather exacerbated Nicolo's various medical conditions. The District Court held a hearing, which featured the testimony of Nicolo's personal physician. In denying Nicolo's motion, the District Court found that the maladies complained of were manageable, and thus did not necessitate a months-long delay; the District Court expressed its willingness to schedule more frequent breaks if necessary to ameliorate Nicolo's various symptoms. Indeed, during trial, the District Court offered to delay the proceedings for a couple of days in order to accommodate Nicolo in case he wished to testify in his own defense (Nicolo declined this offer). "A district court has broad discretion to grant or deny a motion for a continuance." *United States v. Cusack*, 229 F.3d 344, 349 (2d Cir. 2000). Having examined the record, we find no indication that the District Court abused its "broad discretion" in denying Nicolo's motion for a continuance.

(b) Change of venue

Nicolo next asserts that the District Court, by denying his motion for a change of venue, compromised his due process rights under the Fifth Amendment and his Sixth Amendment right to trial by an impartial jury.[1] Relying principally on *Rideau v. Louisiana*, 373 U.S. 723 (1963), Nicolo argues that, in light of the pre-trial publicity surrounding his alleged fraudulent scheme, we should presume that the jury pool was irreparably tainted by prejudice.

---

[1] Although venue transfer in federal court is governed by Federal Rule of Criminal Procedure 21, Nicolo has not advanced an argument that the District Court abused its discretion under Rule 21 by declining to move his trial. "We therefore review the District Court's venue-transfer decision only for compliance with the Constitution." *Skilling v. United States*, 130 S. Ct. 2869, 2913 n.11 (2010).

In *Skilling v. United States*, 130 S. Ct. 2896 (2010), the Supreme Court clarified the circumstances in which extensive, local pre-trial publicity is most likely to cause a presumption that the jury pool is prejudiced: "[N]ews stories about Enron did not present the kind of vivid, unforgettable information we have recognized as particularly likely to produce prejudice, and Houston's size and diversity diluted the media's impact." *Id.* at 2916. In other words, "although news stories about [Nicolo] were not kind, they contained no confession or other blatantly prejudicial information of the type readers or viewers could not reasonably be expected to shut from sight." *Id.* Furthermore, the Rochester metropolitan area is much more substantial than the Louisiana parish of 150,000 at issue in *Rideau*. Finally, "[a]lthough the widespread community impact [of a fraud involving Eastman Kodak and the Town of Greece] necessitated careful identification and inspection of prospective jurors' connections [to those involved in the alleged fraud], the extensive screening questionnaire and follow-up *voir dire* were well suited to that task." *Id.* at 2917.

Nicolo identifies one juror whom he claims was prejudiced against him. That juror was a resident of the Town of Greece, and, according to Nicolo, had reason to be biased against him because Nicolo was being accused of participating in a fraud designed to deprive Greece of its proper tax revenues. The juror in question, who lived in her parents' home and who did not pay local property taxes, had no discernible interest of any kind in the outcome of this litigation and assured the District Court that she could maintain her impartiality. Accordingly, the District Court did not err, much less commit "manifest error," by finding that this juror could be impartial, and by empaneling her. *See Id.* at 2903. In sum, we are confident that Nicolo was not deprived of his constitutional rights to due process or of a trial by an impartial jury.

(c) Ineffective assistance of counsel

Nicolo alleges that his counsel in the proceedings before the District Court was ineffective. We decline to adjudicate this claim for ineffective assistance of counsel on this direct appeal because it is preferable that such claims be considered in the first instance through a motion brought under 28 U.S.C. § 2255. *Massaro v. United States*, 538 U.S. 500, 504-05 (2003).

(d) Prosecutorial misconduct

Nicolo, joined by Roeder, contends that he was denied a fair trial because of remarks made by the prosecutor during his closing arguments. In relevant part, the prosecutor stated:

> [Y]ou never heard proof in this case from anyone that said that Ms. Roeder or Mr. Nicolo did, in fact, rely on that audit. So remember that. There was no one that came up here and said Mr. Nicolo relied on that audit to do what he did in this case, which is to pay all that money and rent to his wife. Again, rent was the only issue in that audit.

4

Nicolo asserts that this comment improperly criticized Nicolo for exercising his Fifth Amendment right not to testify, leaving the jury with the incorrect and prejudicial impression that the burden of proof—at least on the tax charges—rested with the defendants.

We review the denial of a motion for a mistrial for abuse of discretion. *United States v. Deandrade*, 600 F.3d 115, 118 (2d Cir. 2010). *See generally Sims v. Blot*, 534 F.3d 117, 132 (2d Cir. 2008) ("A district court has abuse[d] its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or rendered a decision that cannot be located within the range of permissible decisions." (quotation marks and citations omitted)). In setting forth a prosecutorial misconduct claim based on remarks made during the course of trial, a defendant bears "a heavy burden, because the misconduct alleged must be so severe and significant as to result in the denial of [his] right to a fair trial." *United States v. Locascio*, 6 F.3d 924, 945 (2d Cir. 1993). We have recently stated that to determine whether such statements have caused the defendant "prejudice," we must look to "the severity of the misconduct" as well as "the measures adopted to cure the misconduct." *United States v. Caracappa*, 614 F.3d 30, 41 (2d Cir. 2010). Furthermore, "a court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations." *Donnelly v. DeChristoforo*, 416 U.S. 637, 647 (1974).

Defendants' counsel rejected the District Court's offer to give the jury a curative instruction, and the jury was repeatedly instructed that the burden of proof in this case rested entirely with the government. We presume that juries follow limiting instructions. *United States v. Snype*, 441 F.3d 119, 129-30 (2d Cir. 2006) (citing *Zafiro v. United States*, 506 U.S. 534, 540-41 (1993)). In the particular circumstances presented here, while the prosecutor's remarks in question give us some pause, we conclude they did not jeopardize the right to a fair trial of Nicolo or Roeder.

(e) Honest services fraud

Nicolo's arguments challenging the constitutionality and application of 18 U.S.C. § 1346 have been foreclosed by the Supreme Court's intervening decision in *Skilling*.
    (2) *Charles Schwab*

On February 29, 2008, Schwab pleaded guilty to four counts in the indictment charging him with conspiring to commit mail and wire fraud in addition to one count of committing honest services fraud. The written plea agreement contained an appeal-waiver provision, under which Schwab agreed to waive his right to appeal his sentence so long as he was sentenced to a term of imprisonment of 293 months or less.

5

On appeal, Schwab asserts that this appeal-waiver provision is unenforceable even though he was sentenced principally to 144 months of imprisonment. Schwab points to his plea hearing before the District Court—conducted pursuant to Rule 11 of the Federal Rules of Criminal Procedure—as evidence that either (a) Schwab did not accept the terms of the plea agreement "knowingly," *United States v. Haynes*, 412 F.3d 37, 39 (2d Cir. 2005), or (b) the District Court failed to identify a proper factual basis for the plea agreement, Fed. R. Crim. P. 11(b)(3). This argument is made for the first time on appeal.

"[W]here a defendant raises on appeal a claim of Rule 11 error that he did not raise in the district court, that claim is reviewable only for plain error." *United States v. Torrellas*, 455 F.3d 96, 103 (2d Cir. 2006). Under the plain error standard, we may, in our discretion, correct an error not raised at trial only where the appellant demonstrates that "(1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *United States v. Marcus*, 130 S. Ct. 2159, 2164 (2010) (quotation marks omitted). The Supreme Court has held that "a defendant who seeks reversal of his conviction after a guilty plea, on the ground that the district court committed plain error under Rule 11, must show a reasonable probability that, but for the error, he would not have entered the plea." *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004). Furthermore, Schwab must overcome the obstacle of his appeal waiver. In *United States v. Gomez-Perez*, 215 F.3d 315 (2d Cir. 2000), we held:

> [A] defendant may have a valid claim that the waiver of appellate rights is unenforceable ... when [1] the waiver was not made knowingly, voluntarily, and competently, [2] when the sentence was imposed based on constitutionally impermissible factors, such as ethnic, racial or other prohibited biases, [3] when the government breached the plea agreement, or [4] when the sentencing court failed to enunciate any rationale for the defendant's sentence, thus amounting to an abdication of judicial responsibility subject to mandamus.

*Id.* at 319 (citations and punctuation omitted).

During the plea hearing, Schwab acknowledged that he had received money from some of his co-defendants in connection with his tax appraisal assessments, but he specifically refused to accept the government's contention that his appraisals were altered in light of the consideration he received. This led to the following exchange:

> THE COURT: I understand the essence of the offense here, that it's the payment of the money—whether it's a dime or $100 or a million dollars—as a public official, Mr. Schwab could not and should not have done that.

6

[PROSECUTOR]: Yes, he should not receive any money for doing any official act, whether the official act was the right thing to do or the wrong thing to do, he shouldn't receive any money.

THE COURT: That's the essence of the crime, so I'm not sure Mr. Schwab's insistence here today that it wasn't so much a *quid pro quo* necessarily defeats the plea here. He's admitting that he shouldn't have taken any money, and he knew that, and he took a lot of it.

[PROSECUTOR]: Yes, Your Honor, we believe that fits the elements of the crime.

THE COURT: All right. Is that all right, Mr. Schwab, as I framed it?

[SCHWAB]: Yes, sir.

Schwab contends that his statements at his plea hearing reflect that his plea agreement was not entered into "knowingly" because he explicitly disavowed engaging in conduct—receiving a *quid pro quo*—sufficient to warrant a conviction for honest services fraud. But Schwab freely acknowledged receiving money in connection with the assessment reductions that he had arranged. Such "kickbacks" are sufficient to warrant prosecution under 18 U.S.C. § 1346. *See Skilling*, 130 S. Ct. at 2933-34 (citing 41 U.S.C. § 52(2) as representative federal statute proscribing "kickbacks," defined as "any money, fee, commission, credit, gift, gratuity, thing of value, or compensation of any kind which is provided, directly or indirectly, to [enumerated persons] for the purpose of improperly obtaining or rewarding favorable treatment in connection with [enumerated circumstances].").

It is true that the applicable United States Sentencing Guidelines range set forth in the written plea agreement appears to assume that Schwab committed honest services fraud *by means of bribery*. In the plea agreement the parties stipulated that Schwab would be subject to a two-level enhancement pursuant to U.S.S.G. § 2C1.1(b)(1) (offense involved more than one bribe or extortion). However, the error as to the correct Guidelines range—below which Schwab was ultimately sentenced—does not, speak to whether Schwab "knowingly" waived his right to appeal. In order for an appeal waiver to be entered into knowingly, a district court need only ensure that the defendant "fully underst[ands] the potential consequences of his [appeal] waiver." *United States v. Ready*, 82 F.3d 551, 557 (2d Cir. 1996). An appeal waiver would be useless to the government if it could be invalidated when a defendant simply pointed out that the plea agreement might have contained some legal error of which the defendant had no "knowledge" at the time he signed the agreement in question. *See United States v. Buissereth*, No. 09-5358-cr, 2011 U.S. App. LEXIS 5309, at *8 (2d Cir. Mar. 15, 2011).

During the plea colloquy, the District Court expressly sought—and received—Schwab's assurances that he understood the terms of the appeal waiver contained in his plea agreement. Moreover, in light of the fact that the sentence imposed was significantly lower than the maximum

7

sentence contemplated by the plea agreement, we find nothing "fundamentally unfair" about Schwab's sentence. *Gomez-Perez*, 215 F.3d at 320.

For the foregoing reasons, we conclude that Schwab's appeal waiver is valid. Accordingly, Schwab's appeal must be dismissed. *United States v. Arevalo*, 628 F.3d 93, 98-101 (2d Cir. 2010).

*(3) David Finnman*

On appeal Finnman, joined by Roeder, contends that he should not have been joined with his co-defendants under Rule 8(b) of the Federal Rules of Criminal Procedure, or, alternatively, that the District Court abused its discretion in denying his motion for severance pursuant to Rule 14.

We review the propriety of joinder *de novo*. *United States v. Rittweger*, 524 F.3d 171, 177 (2d Cir. 2008). "Rule 8(b) allows joinder of two or more defendants 'if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions, constituting an offense or offenses.'" *Id.* (quoting Fed. R. Crim. P. 8(b)). Here, the acts alleged in the indictment were undoubtedly "unified by some substantial identity of facts or participants," *and* arose "out of a common plan or scheme." *United States v. Attanasio*, 870 F.2d 809, 815 (2d Cir. 1989) (quotation marks omitted). In its indictment, the government identified a series of overlapping conspiracies involving kickbacks relating to favorable property tax assessments and the fraudulent tax treatment of some of those proceeds. In light of the "factual overlap among charges," we are satisfied that "joint proceedings . . . produce[d] sufficient efficiencies such that joinder [was] proper notwithstanding the possibility of prejudice to [any of] the defendants resulting from the joinder." *United States v. Shellef*, 507 F.3d 82, 98 (2d Cir. 2007). Accordingly, we find no error in the joinder under Rule 8(b).

Defendants next argue that the District Court erred in denying his motion for a severance pursuant to Rule 14. Whether to grant or deny a severance motion is "committed to the sound discretion of the trial judge." *United States v. Casamento*, 887 F.2d 1141, 1149 (2d Cir. 1989). "The district court's exercise of that discretion is virtually unreviewable." *United States v. Salameh*, 152 F.3d 88, 115 (2d Cir. 1998) (quotation marks omitted). Accordingly, a district court's denial of a severance motion under Federal Rule of Criminal Procedure 14 will be reversed "only if a defendant can show prejudice so severe that his conviction constituted a miscarriage of justice, and that the denial of his motion constituted an abuse of discretion." *Id.* (quotation marks omitted). As the Supreme Court has further explained, "a district court should grant a severance . . . only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539.

We find nothing in this record that would enable Finnman or Roeder to meet this hefty burden.

8

*(4) Constance Roeder*

(a) Sufficiency of the evidence

Roeder argues that the proof at trial was insufficient to establish either that she conspired with Nicolo to defraud the IRS or that she willfully violated any tax laws.

We review a challenge to the sufficiency of the evidence *de novo. United States v. Leslie*, 103 F.3d 1093, 1100 (2d Cir. 1997). In *United States v. Reifler*, 446 F.3d 65 (2d Cir. 2006), we observed:

> "In challenging the sufficiency of the evidence to support his conviction, a defendant bears a heavy burden." *United States v. Hamilton*, 334 F.3d 170, 179 (2d Cir. 2003). In considering such a challenge, we must credit every inference that could have been drawn in the government's favor, and affirm the conviction so long as, from the inferences reasonably drawn, the jury might fairly have [reached the conclusion of] guilt beyond a reasonable doubt. "We defer to the jury's determination of the weight of the evidence and the credibility of the witnesses, and to the jury's choice of the competing inferences that can be drawn from the evidence." *United States v. Morrison*, 153 F.3d 34, 39 (2d Cir. 1998). [Items] of evidence must be viewed not in isolation but in conjunction, and the conviction must be upheld if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

*Id.* at 94-95 (citations omitted). *See generally Jackson*, 443 U.S. 307.

At trial, the government presented overwhelming evidence that Roeder willfully filed false tax returns and conspired with Nicolo, her husband, to defraud the IRS. For instance, the government presented evidence that Nicolo and Roeder arranged for Roeder to be paid grossly inflated and undeserved rental income and consulting fees in order to reduce the tax liability of Nicolo's business. Roeder then filed tax returns claiming business deductions to which she was not entitled, and, based on the evidence, a jury could reasonably conclude that Roeder knew she was claiming deductions to which she was not entitled. Additionally, Roeder's tax returns indicated that she earned an average of $462,755 per year in salary from 1998 to 2004 for purely secretarial work—making her, unbelievably, more profitable than Nicolo's three businesses combined.

(b) Evidentiary rulings

Roeder next argues that the District Court erred in admitting numerous pages of business records obtained from Nicolo, pursuant to a stipulation signed by Nicolo.

At oral argument, the government conceded that Nicolo's stipulation did not meet the requirements set forth in Rule 902(11) of the Federal Rules of Evidence.[2] Accordingly, we must conclude that the government failed to establish a proper foundation for the admission of Nicolo's business records into evidence.

Because Roeder objected to the admission of these documents at trial, the government has the burden of proving that this error was harmless as to her. *United States v. Kaiser*, 609 F.3d 556, 573 (2d Cir. 2010). "Error is harmless if it is 'highly probable' that it did not contribute to the verdict." *United States v. Forrester*, 60 F.3d 52, 64 (2d Cir. 1995).

Although Nicolo's business records were relied on heavily by the government throughout the course of the trial, after reviewing the record, we think it is highly probable that this evidence did not contribute to any of the verdicts rendered against *Roeder*. For instance, as concerns Roeder's conviction for conspiring to defraud the IRS, the government presented overwhelming evidence—unrelated to the business records at issue—that Roeder received grossly inflated rental income from Nicolo in order to reduce Nicolo's federal tax liabilities. The jury made a specific finding that, as to Roeder and Nicolo, this overt act was proven beyond a reasonable doubt. This alone is sufficient to sustain Roeder's conspiracy conviction. Similarly, Nicolo's business records could not have influenced the jury's verdicts with respect to Roeder on the individual counts of filing false tax returns, since those charges were predicated on the government's theory—based on Roeder's own tax documents as well as testimony from some of Roeder's business associates—that any Schedule C deductions claimed by Roeder must have been improper since Roeder knew that she did not operate a meaningful business of her own.

---

[2] Rule 902(11) provides:

> Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following . . .
>
> (11) Certified domestic records of regularly conducted activity. The original or a duplicate of a domestic record of regularly conducted activity that would be admissible under Rule 803(6) if accompanied by a written declaration of its custodian or other qualified person, in a manner complying with any Act of Congress or rule prescribed by the Supreme Court pursuant to statutory authority, certifying that the record–
>
> > (A) was made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters;
> > (B) was kept in the course of the regularly conducted activity; and
> > (C) was made by the regularly conducted activity as a regular practice.
>
> A party intending to offer a record into evidence under this paragraph must provide written notice of that intention to all adverse parties, and must make the record and declaration available for inspection sufficiently in advance of their offer into evidence to provide an adverse party with a fair opportunity to challenge them.

Fed. R. Evid. 902(11).

Accordingly, we find that the District Court's error in admitting the Nicolo business records was harmless.

(c) Jury instructions

Roeder also contends that the District Court erred in failing to charge materiality as a question of fact for the jury to determine in connection with charges brought under 26 U.S.C. § 7206.

We have held in *United States v. Klausner*, 80 F.3d 55, 60 (2d Cir. 1996), that *any* failure to report income is material as a matter of law for purposes of § 7206. This holding has not been expressly overruled by the Supreme Court. In *Neder v. United States*, 527 U.S. 1, 8 (1999), the government conceded that it was error for the issue of materiality not to go to a jury in a prosecution brought under § 7206. However, in holding this error harmless, the Court observed, without any sign of disapprobation, that several circuits had held that "any failure to report income is material." *Id.* at 16 (quotation marks omitted). We thus conclude that *Klausner* remains good law in our Circuit; alternatively, when read in tandem with *Neder*, *Klausner* would stand for the proposition that, at least in our Circuit, any failure to present the materiality element of a crime under § 7206 is *necessarily* harmless.

Finally, we consider whether the District Court erred in submitting a "consciousness of guilt" charge to the jury. We review jury instructions *de novo*, and reverse only when the charge, viewed as a whole, and in the context of the entire trial constitutes prejudicial error. *See United States v. Amato*, 540 F.3d 153, 164 (2d Cir. 2008); *United States v. Middlemiss*, 217 F.3d 112, 121 (2d Cir. 2000). The District Court instructed the jury that the government argued at trial that Nicolo and Roeder, or one or the other, intentionally fabricated certain documents in order to mislead investigating authorities and/or the jury. The District Court further explained that if the jury did conclude that Nicolo or Roeder fabricated evidence, the jury could then draw "an inference of consciousness of guilt" as to that particularly defendant, with the understanding that this consciousness of guilt inference could not be sufficient on its own to sustain a conviction. The principal factual predicate for this charge, according to the District Court, was "Exhibit D-1 ," an exhibit entered into evidence by Nicolo. *See United States v. Amuso*, 21 F.3d 1251, 1260 (2d Cir. 1994) (requiring factual predicate in record from which a reasonable jury can make necessary inferences to give [the evidence highlighted in the charge] probative value). This exhibit consisted of a potentially exculpatory letter relating to the honest services fraud charges against Nicolo, purportedly from Mark Camarata of the Eastman Kodak Company to Nicolo. The government argued that this document was created by forging Camarata's signature. Importantly, Roeder never sought to introduce this document into evidence, and never relied on it or referenced it in her defense—indeed, Roeder was never charged with honest services fraud. The best the government could do to link Roeder to this document that she avowedly never produced and never sought to

11

admit into evidence  was to argue that evidence at trial indicated that Nicolo was not technologically sophisticated, so it would be reasonable to suspect that he enlisted Roeder to produce this forgery. The theory is far from compelling.

The government also argues that the consciousness-of-guilt instruction references, in a general way, evidence submitted at trial that Roeder may have altered or fabricated other documents to hide her guilt.  However, this other evidence all seems to derive from Nicolo's business records—evidence which we have already determined was inadmissible as to Roeder.  *See ante* at 12.

In sum, we do not think there was a legitimate basis in evidence supporting a consciousness-of-guilt instruction as to Roeder, and conclude that this instruction should not have been given. However, while the inclusion of this instruction undoubtedly was unhelpful to Roeder's cause, we must hold this error to be harmless in light of the ample evidence presented by the government indicating Roeder's guilt.  *See ante*, at 12.  More precisely, we are persuaded that it is clear beyond a reasonable doubt that a rational jury would have found Roeder guilty absent the District Court's error.  *See Neder*, 527 U.S. at 18; *United States v. Bah*, 574 F.3d 106, 114 (2d Cir. 2009).

## Conclusion

We have considered all of defendants' arguments and find them to be without merit. Accordingly, for the foregoing reasons, the convictions of Nicolo, Finnman, and Roeder are **AFFIRMED**.  Schwab's appeal is hereby **DISMISSED**.

FOR THE COURT,
Catherine O'Hagan Wolfe, Clerk of Court

12