STATE OF CONNECTICUT *v.* DUROSOLA CRUMP
(AC 33467)

DiPentima, C. J., and Alvord and Peters, Js.

Argued March 8—officially released September 17, 2013

*Pamela S. Nagy*, assigned counsel, for the appellant (defendant).

*Joseph T. Corradino*, senior assistant state's attorney, with whom, on the brief, were *John C. Smriga*, state's attorney, and *Kiran Rosenkilde* and *Peter Malfa*, certified legal interns, for the appellee (state).

*Opinion*

ALVORD, J. The defendant, Durosola Crump, appeals from the judgment of conviction, rendered after a jury

trial, of one count of sexual assault in the fourth degree in violation of General Statutes § 53a-73a (a) (1) (A), two counts of attempt to commit sexual assault in the first degree in violation of General Statutes §§ 53a-49 (a) (2) and 53a-70 (a) (2), three counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (1), and three counts of risk of injury to a child in violation of § 53-21 (a) (2). The defendant claims that (1) the prosecutorial improprieties that occurred throughout the trial and summation deprived him of a fair trial, and (2) the sentence for attempted first degree assault, as well as the conditions that the defendant undergo psychiatric counseling and contribute to the sexual assault victims fund, were illegal. We affirm the judgment of the trial court.

On the basis of the evidence presented at trial, the jury reasonably could have found the following facts. In January, 2009, the victim[1] was eleven years old and lived in Bridgeport with her mother, her older sister, and her twin brother. The victim's grandmother resided in a different house in Bridgeport with her adult son, her live-in boyfriend, and two adopted children. The defendant, an adult, is the victim's first cousin once removed and the nephew of the victim's grandmother.

The incidents leading to the defendant's conviction occurred at the victim's grandmother's house on three separate occasions. The first incident involved the defendant fondling the victim's breasts when she was alone in the living room. The second incident involved the defendant attempting to have sexual intercourse with the victim when she was alone in the garage. The third incident involved the defendant forcing the victim

---

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual assault and the crime of risk of injury to a child, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

to perform oral sex on him when she was alone in the living room.[2]

The victim did not disclose any of the incidents involving the defendant until February 2, 2009, when she told her brother, who subsequently told their mother. Immediately thereafter, the victim's mother called the police and took the family to the house of the victim's grandmother, where officers from the Bridgeport Police Department then spoke with the victim in person. On February 10, 2009, the victim was interviewed at the Center for Women and Families by a forensic interviewer. Her recounting of the incidents during the interview differed from the testimony she gave subsequently at trial. The next day, on February 11, 2009, the victim was examined by a pediatric nurse practitioner at the Child Sexual Abuse Evaluation Clinic at Yale-New Haven Hospital. This examination neither confirmed nor refuted the victim's allegations.

The state charged the defendant by amended information with one count of sexual assault in the fourth degree in violation of § 53a-73a (a) (1) (A), two counts of attempt to commit sexual assault in first degree in violation of §§ 53a-49 (a) (2) and 53a-70 (a) (2), three counts of risk of injury to a child in violation of § 53-21 (a) (1), and three counts of risk of injury to a child in violation of § 53-21 (a) (2). The jury returned a guilty verdict on all counts. The court rendered judgment of conviction in accordance with the jury's verdict and sentenced the defendant to a total effective term of twenty-five years of incarceration. This appeal followed.

---

[2] The victim was unsure of the sequence of the second and third incidents; therefore, the order in which they are presented in this opinion is not necessarily indicative of the chronological order. The victim indicated at trial that the three incidents occurred over a relatively short period of time.

I

The defendant first claims that prosecutorial impropriety during the course of the proceedings deprived him of his due process right to a fair trial.[3] Specifically, he argues that the prosecutor committed deliberate impropriety by (1) commenting on the defendant's failure to testify at trial; (2) vouching for the victim's credibility; (3) engaging in a course of action designed to generate sympathy for the victim; and (4) commenting on facts outside of the record. We conclude that the prosecutor did improperly comment on facts outside of the record; however, those comments did not deprive the defendant of a fair trial.

Before addressing the merits of the defendant's claims, we set forth the law governing prosecutorial impropriety. "[I]n analyzing claims of prosecutorial [impropriety], [this court] engage[s] in a two step analytical process. The two steps are separate and distinct: (1) whether [impropriety] occurred in the first instance; and (2) whether that [impropriety] deprived a defendant of his due process right to a fair trial. . . . [W]hen a defendant raises on appeal a claim that improper remarks by the prosecutor deprived the defendant of his constitutional right to a fair trial, the burden is on the defendant to show . . . that the remarks were improper . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Taft*, 306 Conn. 749, 761–62, 51 A.3d 988 (2012). "[T]o deprive a defendant of his constitutional right to a fair trial . . . the prosecutor's conduct must have so infected the trial with unfairness

---

[3] At the outset, we note that the defendant did not preserve by way of objections or motions for a mistrial his claims of prosecutorial impropriety that he now raises on appeal. Nevertheless, "[a] claim of prosecutorial impropriety . . . even in the absence of an objection, has constitutional implications and requires a due process analysis under *State* v. *Williams*, 204 Conn. 523, 535–40, 529 A.2d 653 (1987)." (Internal quotation marks omitted.) *State* v. *Wilson*, 308 Conn. 412, 434, 64 A.3d 91 (2013).

as to make the resulting conviction a denial of due process. . . . We do not focus alone, however, on the conduct of the prosecutor. The fairness of the trial and not the culpability of the prosecutor is the standard for analyzing the constitutional due process claims of criminal defendants alleging prosecutorial [impropriety]." (Internal quotation marks omitted.) *State* v. *Campbell*, 141 Conn. App. 55, 60, 60 A.3d 967, cert. denied, 308 Conn. 933, 64 A.3d 331 (2013).

When determining whether the prosecutor's conduct constituted impropriety, we are mindful of the unique responsibilities of the prosecutor in our judicial system and the great influence a prosecutor may have on the jury. See *State* v. *Fauci*, 282 Conn. 23, 32–33, 917 A.2d 978 (2007). At the same time, we "must give due deference to the fact that [c]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument. . . . Thus, as the state's advocate, a prosecutor may argue the state's case forcefully, [provided the argument is] fair and based upon the facts in evidence and the reasonable inferences to be drawn therefrom." (Internal quotation marks omitted.) *State* v. *Jordan*, 132 Conn. App. 817, 828–29, 33 A.3d 307, cert. denied, 304 Conn. 909, 39 A.3d 1119 (2012).

When reviewing an allegation that the prosecutor improperly commented on the defendant's failure to testify, "we ask: Was the language used manifestly intended to be, or was it of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify? . . . [W]e must look to the context in which the statement was made in order to determine the manifest intention which prompted it and its natural and necessary impact upon

the jury." (Internal quotation marks omitted.) *State* v. *Rizzo*, 266 Conn. 171, 269, 833 A.2d 363 (2003).

With respect to the remaining claims of impropriety, our review is as follows. "We consistently have held that it is improper for a prosecuting attorney to express his or her own opinion, directly or indirectly, as to the credibility of witnesses." (Internal quotation marks omitted.) *State* v. *Long*, 293 Conn. 31, 38, 975 A.2d 660 (2009). At the same time, "[t]he prosecutor . . . is not barred from commenting on the evidence presented at trial or urging the jury to draw reasonable inferences from the evidence that support the state's theory of the case . . . . We must give the jury the credit of being able to differentiate between argument on the evidence and attempts to persuade [it] to draw inferences in the state's favor, on one hand, and improper unsworn testimony, with the suggestion of secret knowledge, on the other hand." (Internal quotation marks omitted.) Id.

Next, "[i]t is well established that, [a] prosecutor may not appeal to the emotions, passions and prejudices of the jurors. . . . [S]uch appeals should be avoided because they have the effect of diverting the jury's attention from their duty to decide the case on the evidence." (Internal quotation marks omitted.) *State* v. *Bermudez*, 274 Conn. 581, 595–96, 876 A.2d 1162 (2005). "When the prosecutor appeals to emotions, he invites the jury to decide the case, not according to a rational appraisal of the evidence, but on the basis of powerful and irrelevant factors which are likely to skew that appraisal." (Internal quotation marks omitted.) *State* v. *Santiago*, 143 Conn. App. 26, 40, 66 A.3d 520 (2013).

Finally, it is well established that "a prosecutor, in fulfilling his duties, must confine himself to the evidence in the record. . . . Statements as to facts that have not been proven amount to unsworn testimony, which is not the subject of proper closing argument."

(Internal quotation marks omitted.) *State* v. *Jones*, 135 Conn. App. 788, 801, 44 A.3d 848, cert. denied, 305 Conn. 925, 47 A.3d 885 (2012). "A prosecutor may invite the jury to draw reasonable inferences from the evidence; however, he or she may not invite sheer speculation unconnected to evidence." Id. When deciding cases, however, "jurors . . . are not expected to lay aside matters of common knowledge or their own observations and experiences, but rather, to apply them to the facts as presented to arrive at an intelligent and correct conclusion. . . . Therefore, it is entirely proper for counsel to appeal to a jury's common sense in closing remarks." (Internal quotation marks omitted.) *State* v. *Warholic*, 278 Conn. 354, 365, 897 A.2d 569 (2006).

Turning to step one of our two step analysis, we address each of the defendant's claims of impropriety in turn. The first set of statements made by the prosecutor that the defendant claims constitute impropriety occurred during her initial closing argument. The prosecutor addressed the difficulty the victim faced when disclosing the defendant's assaults by noting that "the person, the little that we know about the defendant from—from some of the testimony, some of the cross-examination, you know, maybe this wasn't the easiest person to get in trouble" given his previous positive interactions with the victim's extended family. The defendant argues that this statement constituted prosecutorial impropriety because the prosecutor improperly commented on the defendant's decision not to testify. We do not agree.

The prosecutor's statement was not an impermissible comment on the defendant's failure to testify, but rather constituted a proper statement in support and explanation of the state's case. When read in the context of the closing argument, the prosecutor's statement merely served to relate the evidence back to the question of why the victim would accuse a family member of sexual

assault. It was not a statement of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify, nor did it manifest an intent to so comment. Accordingly, we conclude that the remark was not improper.

Next, the defendant claims that impropriety occurred when the prosecutor stated that the victim underwent a gynecological examination that she was not required to undergo, that the case against the defendant would have gone forward regardless of whether she underwent an examination, that the victim was "aware that she was telling [the jury] something different than she told anyone ever before," that the victim came to court and "did the best she could," and that the jury "[did not] have to take [the victim's] explanation, but if she wanted to come in here and sell you a story that wasn't true, is that what she would've done?" The defendant argues that through these comments, the prosecutor improperly vouched for the victim's credibility as she indirectly implied that the victim testified truthfully. The defendant argues that the prosecutor's statements, when taken with the victim's testimony, improperly conveyed the impression that what she told the prosecutor in their meetings outside of court was consistent with what she testified to at trial. We do not agree.

With regard to the prosecutor's statements that the victim was "aware that she was telling [the jury] something different than she told anyone ever before" and that the victim still came to court and "did the best she could," the record provides sufficient evidence from which the jurors could have drawn the inference that the victim did not want to appear in court and testify. During direct examination, the victim was asked by the prosecutor whether she wanted "to come in here and talk about this today," and she responded in the negative. She also stated that she "[doesn't] like talking about it" in reference to the incidents involving the

defendant. In addition, there was sufficient evidence from which the jury could have drawn the inference that the victim was aware of her inconsistencies during testimony. She admitted that she did not tell the interviewer at the Center for Women and Families about some events she revealed at trial, but stated that this was because she "didn't know her" and she "wasn't ready to tell people" about the incidents. A prosecutor is not barred from urging the jury to draw reasonable inferences from the evidence that support the state's theory of the case, which here rested on the strength of the victim's credibility. See *State* v. *Long*, supra, 293 Conn. 38. Accordingly, the prosecutor's comments did not constitute indirect assertions that the victim testified truthfully, but rather were permissible statements asking the jury to evaluate her testimony in light of the evidence.

Likewise, neither the prosecutor's statements concerning the gynecological examination nor the prosecutor's rhetorical question—"but if she wanted to come in here and sell you a story that wasn't true, is that what she would have done?"—constitute an improper vouching for the credibility of the victim. This court previously has deemed proper similar comments in which a prosecutor asked jurors to use their common sense to infer that an individual's complaint was more credible because it required her to undergo an uncomfortable medical examination and embarrassing conversations with both her family members and complete strangers. See id., 47–48. Here, the prosecutor recognized the jurors' function of gauging the credibility of witnesses and reminded them that they "don't have to take [the victim's] explanation" when considering her testimony. The prosecutor was simply asking the jury to draw on its common sense regarding the likelihood

of the victim making up the allegations; she did not improperly vouch for the credibility of the victim.

The third set of statements made by the prosecutor that the defendant claims constitute impropriety occurred during the prosecutor's initial closing argument, when the prosecutor repeatedly commented on the "huge burden for [the victim] to carry around" and asked the jury: "How hard was that for [the victim] to tell? How hard was any of this for her to tell you?" while pointing to the fact that the victim "just wanted to get out of here." The defendant claims that these statements constituted prosecutorial impropriety because the prosecutor was attempting to appeal to the jurors' emotions and distract them so that they would decide the case on the basis of their emotions rather than the evidence presented. We do not agree.

The record reveals that the term "burden" was being used in connection with the victim's disclosure at trial of the incident in which the defendant forced her to perform fellatio on him and was not a reference to her allegations and appearance at court. The prosecutor was seeking to reference the crime's impact on the victim as it related to her failure to make a prompt disclosure of the incidents, and, in particular, the nature and extent of the defendant's actions in the third incident. Further, as we previously established, there was ample evidence presented from which the jury could draw a reasonable inference that it was difficult for the victim to talk about the incidents and that she wanted to leave the courtroom. Accordingly, these statements fall within the prosecutor's latitude in closing argument to appeal to the jury's common sense, and therefore they are not improper.

The fourth set of statements made by the prosecutor that the defendant claims constitute impropriety

occurred when the prosecutor, in discussing the importance of the fact that the victim underwent a gynecological examination, stated that she had not been required to undergo the examination and that the case would have gone forward regardless of whether she had agreed to the examination. The prosecutor further commented on the gynecological examination by stating: "Why, I submit to you, would this girl have gone so far as to make herself so vulnerable during that physical exam? I'm not preying on your sympathy, ladies and gentlemen, these are the facts, and for those of you, as I tried to point out, who have not been through a gynecological exam, perhaps you can discuss amongst yourself the vulnerable position that you are in with a perfect stranger. Examining her body. Arguably, a part of her body that no one other than the defendant had touched before. A perfect stranger. A nice lady. Stranger right there. Right there into her body. And then—and then—and then she has her turn over and make herself so vulnerable with her behind exposed for examination." The defendant claims that through these statements, the prosecutor improperly commented on facts outside of the record.[4]

The state concedes, and we agree, that the prosecutor did allude to facts outside of the record in the latter

---

[4] The defendant also claims that these statements constituted prosecutorial impropriety because they improperly appealed to the emotions of the jury. The prosecutor's description of the victim as "vulnerable" was grounded in the evidence and relevant to her credibility. "This court previously has held that it was not improper for the prosecutor to refer to the victim as vulnerable when the argument amounted to a reasonable inference from the testimony at trial." *State* v. *Cromety*, 102 Conn. App. 425, 434–35, 925 A.2d 1133, cert. denied, 284 Conn. 912, 931 A.2d 932 (2007). The prosecutor set forth the evidence and asked the jury to weigh that evidence and to use common sense to determine the likelihood of the defendant's version of events. As we previously have established, "[i]t is not improper for the prosecutor to comment upon the evidence presented at trial and to argue the inferences that the jurors might draw therefrom . . . ." (Internal quotation marks omitted.) *State* v. *Martinez*, 95 Conn. App. 162, 184, 896 A.2d 109, cert. denied, 279 Conn. 902, 901 A.2d 1224 (2006). Accordingly, these comments were not improper.

part of her comment regarding the gynecological examination of the victim.[5] Specifically, we note that there was no evidence that (1) the victim was aware that she did not have to agree to that examination; (2) the victim was not going to get in trouble for refusing to take part in the examination; (3) no one was forcing the victim to undergo the examination; and (4) the case would have gone forward without the examination. The prosecutor's comments on this subject were improper, and we therefore must turn to the second step of our analysis to determine whether the impropriety "so infected the trial with unfairness as to make the conviction a denial of due process." (Internal quotation marks omitted.) *State* v. *Stevenson*, 269 Conn. 563, 589, 849 A.2d 626 (2004).

To determine whether the improper conduct by the prosecutor violated the defendant's right to a fair trial, we must consider the factors enumerated in *State* v. *Williams*, 204 Conn. 523, 540, 529 A.2d 653 (1987). These factors include: (1) the extent to which the impropriety was invited by the defense; (2) the frequency of the impropriety; (3) the severity of the impropriety; (4) the centrality of the impropriety to the critical issues in the case; (5) the strength of the state's case; and (6) the strength of the curative measures adopted by the court. Id. These factors are viewed within the context of the entire trial. See *State* v. *Stevenson*, supra, 269 Conn. 574. Our review of the *Williams* factors leads us to conclude that the defendant's conviction was not a denial of due process.

[5] The defendant claims that the prosecutor also commented on facts outside of the record by stating that: (1) the victim was aware of her inconsistencies prior to trial and knew that she would have to come to court; (2) nobody else had ever touched the victim in her private area before; and (3) the victim wanted to get out of the courtroom during the trial. After a thorough review of the record, we conclude that these three statements did not incorporate facts outside of the record.

At the outset, we note that the state does not argue that the defendant invited the single instance of prosecutorial impropriety, and that the defendant did not object to the impropriety when it occurred or move for the prosecutor's remarks to be stricken from the record. Next, we must examine the second and third *Williams* factors, which are the frequency and severity of the prosecutor's impropriety in making the statement. As this court previously has noted, "[o]ne instance of impropriety over the course of an entire trial is not frequent." *State* v. *Felix*, 111 Conn. App. 801, 816, 961 A.2d 458 (2008). Further, when determining the severity of an improper statement, our Supreme Court has noted that it considers it "highly significant [when] defense counsel fail[s] to object to any of the improper remarks, request curative instructions, or move for a mistrial." *State* v. *Thompson*, 266 Conn. 440, 479, 832 A.2d 626 (2003). "[O]nly instances of grossly egregious [impropriety] will be severe enough to mandate reversal." Id., 480. Here, there was only one instance of impropriety and it was not objected to at trial; we do not conclude that it was frequent or severe.

We now turn to the fourth and fifth *Williams* factors, which are the centrality of the impropriety to the critical issues and strength of the state's case. The central issue in the case was the credibility of the victim. As our Supreme Court has noted, "a child sexual abuse case lacking conclusive physical evidence, when the prosecution's case rests on the credibility of the victim . . . is not particularly strong . . . ." (Internal quotation marks omitted.) *State* v. *Warholic*, supra, 278 Conn. 397. At the same time, "[t]he state's evidence does not need to be overwhelming to support a conclusion that prosecutorial impropriety did not deprive the defendant of a fair trial." *State* v. *Felix*, supra, 111 Conn. App. 816. We agree with the defendant, however, that the

impropriety was central to the present case, and that the state's case was not particularly strong.

Finally, we examine the last *Williams* factor, which is the strength of the curative measures adopted by the court. The defendant did not object or request a special instruction to address the impropriety; thus, the trial court provided no specific curative measures. "We emphasize the responsibility of [the defendant], at the very least, to object to perceived prosecutorial improprieties as they occur at trial . . . [and a defendant's] failure to object to the prosecutor's argument . . . when [it is] made suggests that [the defendant] did not believe that [it was] unfair in light of the record of the case at the time. . . . Moreover . . . [while the defendant] may elect not to object to arguments . . . that he or she deems marginally objectionable for tactical reasons . . . [t]he failure by the defendant to request specific curative instructions frequently indicates on appellate review that the challenged instruction did not deprive the defendant of a fair trial." (Citation omitted; internal quotation marks omitted.) *State* v. *Stevenson*, supra, 269 Conn. 597–98. Furthermore, we conclude that the court's jury charge[6] as well as the court's general instructions[7] adequately addressed the improper

---

[6] These instructions provided in relevant part: "In reaching your verdict you should consider all the testimony and the exhibits and stipulations that are received into evidence. Certain things are not evidence, and you may not consider them in deciding what their facts are. They include, one, the arguments and statements by the lawyers. The lawyers are not witnesses, what they have said to you in their closing arguments is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated, the[n] your memory is in control."

[7] These instructions provided in relevant part: "Your verdict must not be influenced by sympathy. It is not within your province to determine, nor may you be affected by the consequences of your verdict upon the accused or his family or upon any other persons affected by your decision. You must, with your duty unswayed by sentiment and emotion, determine your verdict by a careful consideration of the facts disclosed by the evidence and the applications of relevant law to those facts."

remarks. See *State* v. *Mucha*, 137 Conn. App. 173, 201–202, 47 A.3d 931, cert. denied, 307 Conn. 912, 53 A.3d 998 (2012).

In summary, although the prosecutor's improper comment was both uninvited and central to the critical issue in the case, it was not severe, as evidenced by defense counsel's failure to object or seek a curative instruction, and it was limited to one brief statement during the prosecutor's rebuttal closing argument. While the state's case relied on the credibility of a sole witness, the jury properly was instructed that the statements and argument of counsel are not evidence and that it should not resort to sympathy in deciding the case. Accordingly, we conclude that the prosecutor's improper remark did not deprive the defendant of a fair trial and therefore did not violate his right to due process.

## II

We next address the defendant's claim that the court violated his due process rights by failing to abide by the terms of our General Statutes during sentencing. We decline to consider this claim.

The defendant argues that the court improperly: (1) imposed a ten year nonsuspendible sentence for each of the two attempted first degree sexual assault counts pursuant to § 53a-70 (b) (2); (2) required the defendant to undergo counseling pursuant to General Statutes § 53a-40c; and (3) required the defendant to contribute to the sexual assault victims fund pursuant to General Statutes § 54-143c for his conviction of three counts of risk of injury to a child in violation of § 53-21 (a) (1). The defendant asserts that the ten year nonsuspendible sentence and the additional requirements constitute an illegal sentence because the court applied the incorrect

statute.[8] The defendant concedes that he did not object to the sentences when they were rendered by the trial court, nor did he file a motion to correct the sentences pursuant to Practice Book § 43-22.[9] He argues, however, that his unpreserved claims may be reviewed under the plain error doctrine.

"[The plain error] doctrine, codified at Practice Book § 60-5, is an extraordinary remedy used by appellate courts to rectify errors committed at trial that, although unpreserved, are of such monumental proportion that they threaten to erode our system of justice and work a serious and manifest injustice on the aggrieved party. . . . [T]he plain error doctrine is reserved for truly extraordinary situations [in which] the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . Plain error is a doctrine that should be invoked sparingly." (Internal quotation marks omitted.) *State* v. *Sanchez*, 308 Conn. 64, 76–77, 60 A.3d 271 (2013).

---

[8] "[A]n illegal sentence is essentially one which either exceeds the relevant statutory maximum limits, violates a defendant's right against double jeopardy, is ambiguous, or is internally contradictory. . . . Connecticut courts have considered four categories of claims pursuant to [Practice Book] § 43-22. The first category has addressed whether the sentence was within the permissible range for the crimes charged. . . . The second category has considered violations of the prohibition against double jeopardy. . . . The third category has involved claims pertaining to the computation of the length of the sentence and the question of consecutive or concurrent prison time. . . . *The fourth category has involved questions as to which sentencing statute was applicable.*" (Citations omitted; emphasis added; internal quotation marks omitted.) *State* v. *Lawrence*, 281 Conn. 147, 156–57, 913 A.2d 428 (2007). "Accordingly, if a defendant's claim falls within one of these four categories the trial court has jurisdiction to modify a sentence after it has commenced." (Internal quotation marks omitted.) *State* v. *Casiano*, 122 Conn. App. 61, 67, 998 A.2d 792, cert. denied, 298 Conn. 931, 5 A.3d 491 (2010).

[9] Practice Book § 43-22 provides: "The judicial authority may at any time correct an illegal sentence or other illegal disposition, or it may correct a sentence imposed in an illegal manner or any other disposition made in an illegal manner."

This court previously has recognized that "[i]t is not appropriate to review an unpreserved claim of an illegal sentence for the first time on appeal." *State* v. *Brown*, 133 Conn. App. 140, 146 n.6, 34 A.3d 1007, cert. granted on other grounds, 304 Conn. 901, 37 A.3d 745 (2012); see also *State* v. *Starks*, 121 Conn. App. 581, 592, 997 A.2d 546 (2010) (declining to review unpreserved claim of illegal sentence under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 [1989] or plain error doctrine). Underlying this reasoning is our recognition that, pursuant to Practice Book § 43-22, the trial court may correct an illegal sentence at any time. See *Cobham* v. *Commissioner of Correction*, 258 Conn. 30, 38 n.13, 779 A.2d 80 (2001) (clarifying that "judicial authority" in this context refers exclusively to trial court). Consequently, the defendant has the right to file a motion to correct an illegal sentence with the trial court at any time.[10] See *State* v. *Starks*, supra, 592. Therefore, as "the defendant may seek and obtain any appropriate redress before the trial court, we are not persuaded that extraordinary review of the claim under . . . the plain error doctrine is warranted or that our declining to review the claim would result in any hardship or injustice to the defendant." Id.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[10] We note that the trial court remains in the best position to fashion appropriate remedies for an illegal sentence, including reconstructing the sentence to conform to its original intent or resentencing a defendant if it is determined that the original sentence was illegal. *State* v. *Starks*, supra, 121 Conn. App. 592; see also *Cobham* v. *Commissioner of Correction*, supra, 258 Conn. 39.