******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

McDONALD, J., with whom PALMER, J., joins, concurring. The comments of Michael A. Pepper, the senior assistant state's attorney in the present case, clearly conveyed a message to the jury that the defendant, Felix R., should be blamed for compelling the victim to endure the effects of an investigation into her allegations and to have to testify at trial about the basis of those allegations. Pepper's comments sought to invoke sympathy for the victim while impugning the defendant's constitutional right to confront witnesses against him, to mount a defense, and to hold the state to its burden of proving his guilt beyond a reasonable doubt.[1] The comments were improper and egregious. In concluding that all but one of Pepper's comments were not improper because they were ambiguous, contrary to the interpretation of the unanimous Appellate Court panel; see *State* v. *Felix R.*, 147 Conn. App. 206, 220–27, 83 A.3d 619 (2013); the majority disassembles the statements from the context in which they were made, and then constructs a strained interpretation of each to yield the ambiguity the majority creates. Of even greater concern, the majority imports our rules of statutory construction for assessing ambiguity that have no place in evaluating whether the prosecution's argument violated the defendant's constitutional right to a fair trial. Compounding these errors, the majority suggests that multiple ambiguous statements could demonstrate "a pattern" that would deprive the prosecutor's comments of a presumption of propriety, but inexplicably fails to recognize what the collective force of Pepper's statements in the present case manifestly reveals. Indeed, this would seem to be a particularly inapt case to apply such a presumption in light of the past occasions on which this particular senior assistant state's attorney has been found to have exceeded the bounds of proper argument.[2]

Therefore, I agree with the Appellate Court that Pepper committed prosecutorial impropriety during the course of closing argument. I part company with the Appellate Court, however, with respect to the question of whether the improprieties deprived the defendant of a fair trial. In resolving that question, "we consider: (1) the extent to which the [impropriety] was invited by defense conduct or argument; (2) the severity of the [impropriety]; (3) the frequency of the [impropriety]; (4) the centrality of the [impropriety] to the critical issues in the case; (5) the strength of the curative measures adopted; and (6) the strength of the state's case." (Internal quotation marks omitted.) *State* v. *Angel T.*, 292 Conn. 262, 287, 973 A.2d 1207 (2009). I agree with the Appellate Court that the first, second, and fourth factors weigh in the defendant's favor. See *State* v. *Felix R.*, supra, 147 Conn. App. 228–29. With respect to the

third and fifth factors, as the Appellate Court recognized, the impropriety was limited to closing argument and no curative measures were taken because the defendant raised no objection. Id.

I am not persuaded, however, that the Appellate Court gave due weight to the final factor, the strength of the state's case. The victim reported the defendant's abuse to her paternal aunt in late 2007, or early 2008, well before the defendant alleges that he confronted the victim about her involvement with a boy, his claimed motive for her May, 2009 reports of abuse to her maternal aunt and guidance counselor. The victim's mother found the earlier accusation sufficiently credible that she confronted him about it. Most significantly, the defendant's response to questioning by Detective John Ventura of the Wallingford Police Department manifestly reveals the defendant's lack of credibility and consciousness of guilt. The defendant's excited and extremely nervous reaction to Ventura's questions about whether the defendant had purchased a pregnancy test and "morning after" pill for the victim, and his false answers to those questions, was reflective of guilt. No reasonable jury would find credible the defendant's subsequent admission to Ventura that he had lied about such matters when being investigated for abuse because he was embarrassed that the victim was having unprotected sex. Indeed, the defendant was not too embarrassed to level that same accusation against the victim when previously confronted by social workers with the Department of Children and Families. Therefore, despite the fact that certain remarks during closing argument were clearly egregious, I am compelled to conclude that there was not a reasonable likelihood that the jury's verdict would have been different absent the improper remarks, in light of the defendant's own conduct, the constancy of accusation evidence, and the victim's testimony.[3] See *State* v. *Long*, 293 Conn. 31, 37, 975 A.2d 660 (2009) ("[t]he question of whether the defendant has been prejudiced by prosecutorial [impropriety] . . . depends on whether there is a reasonable likelihood that the jury's verdict would have been different absent the sum total of the improprieties" [internal quotation marks omitted]).

Despite this conclusion, I take this opportunity to address the significant flaw in the majority's approach to the question of ambiguity. "[W]hen a defendant raises on appeal a claim that improper remarks by the prosecutor deprived the defendant of his constitutional right to a fair trial, the burden is on the defendant to show, not only that the remarks were improper, but also that, considered in light of the whole trial, the improprieties were so egregious that they amounted to a denial of due process." *State* v. *Payne*, 303 Conn. 538, 562–63, 34 A.3d 370 (2012). At best, this should mean that the defendant must demonstrate that it is more likely than not that the remarks were improper. As such, the defen-

dant would meet his burden by showing that it is more likely than not that the jury would have understood the comments to intimate that the jury could or should decide the case on the basis of improper considerations. Thus, irrespective of whether there is a plausible construction of the prosecutor's comments that could state a proper argument, unless that meaning is equally or more likely to be adopted by the jury than the one stating an improper argument, the defendant should meet his burden of proof.

The majority takes a different tact. It concludes that no impropriety arises when a prosecutor's remarks could be viewed as ambiguous, unless there is a clear (and apparently overwhelming) pattern of such remarks. To determine whether such an ambiguity exists, the majority deems our rules of statutory construction the proper measure. This approach raises both substantive and pragmatic concerns.

As a substantive matter, it imposes a greater burden on the defendant than is required. Under our rules of statutory construction, an ambiguity arises whenever statutory language is subject to more than one plausible interpretation. See *State* v. *Pond*, 315 Conn. 451, 468, 108 A.3d 1083 (2015) ("[b]ecause the statutory language is subject to multiple, plausible interpretations, and it does not expressly address or resolve the certified question, [General Statutes] § 53a-48 [a] is facially ambiguous"); *Commissioner of Correction* v. *Freedom of Information Commission*, 307 Conn. 53, 68, 52 A.3d 636 (2012) ("[b]ecause we believe that both of these interpretations are plausible, we conclude that the language of the first sentence of 8 C.F.R. § 236.6 is ambiguous"); *State* v. *Johnson*, 301 Conn. 630, 650, 26 A.3d 59 (2011) ("[w]e conclude that, because both interpretations are plausible, the statute is ambiguous"); *State* v. *Orr*, 291 Conn. 642, 654, 969 A.2d 750 (2009) ("our case law is clear that ambiguity exists only if the statutory language at issue is susceptible to more than one plausible interpretation"). Ambiguity, as a matter of statutory construction, does not require two or more *equally* reasonable interpretations. Thus, under the majority's approach, any plausible construction will defeat the defendant's claim of impropriety, even if the defendant's interpretation is by far the more reasonable one. In effect, the majority requires the defendant to prove beyond a reasonable doubt that an impropriety occurred by requiring the defendant to demonstrate that his is the only plausible meaning of the challenged remarks.

As a practical matter, the lesser threshold for ambiguity in statutory construction is inappropriate because that question serves a different function than our inquiry in the present case. "When presented with a question of statutory construction, [o]ur fundamental objective is to ascertain and give effect to the apparent intent

of the legislature." (Internal quotation marks omitted.) *Desrosiers* v. *Diageo North America, Inc.*, 314 Conn. 773, 782, 105 A.3d 103 (2014). Moreover, a rule for determining whether statutory text is ambiguous is simply intended to resolve the threshold question of whether it is appropriate to resort to extratextual sources to ascertain the statute's intended meaning. See General Statutes § 1-2z; *State* v. *Johnson*, supra, 301 Conn. 650. By contrast, in considering a claim of improper argument to the jury, we are not concerned with what the prosecutor intended to say, but rather the effect of those remarks on the manner in which the jury decides the case. See *State* v. *Paul B.*, 315 Conn. 19, 36, 105 A.3d 130 (2014) ("[t]he fairness of the trial and not the culpability of the prosecutor is the standard for analyzing the constitutional due process claims of criminal defendants alleging prosecutorial [impropriety]" [internal quotation marks omitted]). Indeed, it is because rules of statutory construction are intended to address a fundamentally different concern than the one before us that they yield a result that is inconsistent with the proper burden of proof in this case.

The majority's reliance on a statement by the United States Supreme Court regarding ambiguity in prosecution argument, which previously has been cited by this court, does not support the majority's approach. When considering a claimed violation of due process due to improper prosecution argument, the United States Supreme Court observed: "The consistent and repeated misrepresentation of a dramatic exhibit in evidence may profoundly impress a jury and may have a significant impact on the jury's deliberations. Isolated passages of a prosecutor's argument, billed in advance to the jury as a matter of opinion not of evidence, do not reach the same proportions. Such arguments, like all closing arguments of counsel, are seldom carefully constructed in toto before the event; improvisation frequently results in syntax left imperfect and meaning less than crystal clear. While these general observations in no way justify prosecutorial misconduct, they do suggest that *a court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations.*" (Emphasis added; internal quotation marks omitted.) *Donnelly* v. *DeChristoforo*, 416 U.S. 637, 646–47, 94 S. Ct. 1868, 40 L. Ed. 2d 431 (1974). The majority relies on the emphasized language to conclude that no impropriety will occur if a statement is subject to more than one interpretation, one of which is not improper. *Donnelly* does not stand for such a proposition. Rather, *Donnelly* made clear that the comment's ambiguity was relevant to determining whether the comment would have deprived the defendant of a fair trial, not whether the comment was improper. See id., 647–48 ("[t]he result reached by the

[United States] Court of Appeals [for the First Circuit] in this case leaves virtually meaningless the distinction between ordinary trial error of a prosecutor and that sort of egregious misconduct held . . . to amount to a denial of constitutional due process" [citation omitted]); see also id., 645 ("[T]he prosecutor's remark here, admittedly an ambiguous one, was but one moment in an extended trial and was followed by specific disapproving instructions. Although the process of constitutional line drawing in this regard is necessarily imprecise, we simply do not believe that this incident made [the] respondent's trial so fundamentally unfair as to deny him due process."); id., 648 n.23 ("We do not, by this decision, in any way condone prosecutorial misconduct, and we believe that trial courts, by admonition and instruction, and appellate courts, by proper exercise of their supervisory power, will continue to discourage it. We only say that, in the circumstances of the case, no prejudice amounting to a denial of constitutional due process was shown."). The court focused on the due process issue even though the defendant's interpretation, while plausible, had been viewed by lower courts as speculative and illogical. See id., 643–45. Federal courts have since typically relied on *Donnelly* in making a determination of whether ambiguous prosecution argument deprived the defendant of a fair trial. See, e.g., *Littlejohn* v. *Trammell*, 704 F.3d 817, 837–38 (10th Cir. 2013); *United States* v. *Nicolo*, 421 Fed. Appx. 57, 62 (2d Cir.), cert. denied,        U.S.     , 132 S. Ct. 338, 181 L. Ed. 2d 212 (2011); *Hein* v. *Sullivan*, 601 F.3d 897, 916 (9th Cir. 2010), cert. denied,        U.S.     , 131 S. Ct. 2093, 179 L. Ed. 2d 890 (2011); *United States* v. *Two Elk*, 536 F.3d 890, 907 (8th Cir. 2008); but see *United States* v. *Stinefast*, 724 F.3d 925, 930 (7th Cir. 2013) ("[g]iven that the comments at issue are ambiguous at best, we are not inclined to find that the prosecutor's statement was clearly improper"); *United States* v. *Rollness*, 320 Fed. Appx. 797, 798 (9th Cir.) ("[t]he first [challenged] statement is ambiguous when considered in context, and therefore does not rise to the level of misconduct"), cert. denied, 558 U.S. 956, 130 S. Ct. 445, 175 L. Ed. 2d 287 (2009).

Although this court has cited *Donnelly* in connection with a determination of whether any impropriety occurred, we have relied on it to reject a damaging interpretation that was not reasonably likely to be adopted by the jury. See *State* v. *Ciullo*, 314 Conn. 28, 48, 100 A.3d 779 (2014) (concluding that prosecutor's isolated comment, in context, would not have been reasonably construed as denigrating defense counsel); *State* v. *Warholic*, 278 Conn. 354, 367–68, 897 A.2d 569 (2006) (concluding that prosecutor's statement was argument for reasonable inference that jury could have drawn from evidence adduced at trial, rather than statement of prosecutor's personal opinion about defendant's guilt, because "[w]hen the statement is read in

context, the prosecutor's assertion was based on the evidence regarding the behavioral patterns of sexually abused children and [the complainant's] own testimony of the sexual assaults"); *State* v. *Reynolds*, 264 Conn. 1, 186 and n.166, 836 A.2d 224 (2003) (concluding that, "[a]lthough we acknowledge that the argument of the state's attorney on this point was not a model of clarity, we are not persuaded that the jury was likely to have understood it as the defendant contends"), cert. denied, 541 U.S. 908, 124 S. Ct. 1614, 158 L. Ed. 2d 254 (2004); *State* v. *Haase*, 243 Conn. 324, 335–36, 702 A.2d 1187 (1997) (concluding that defendant's interpretation was not one that jury naturally and necessarily would have adopted because it was speculative and lacking context, whereas state's proper purpose was "apparent" and made clear by assistant state's attorney's prompt response to defendant's objection), cert. denied, 523 U.S. 1111, 118 S. Ct. 1685, 140 L. Ed. 2d 822 (1998); *State* v. *Marra*, 222 Conn. 506, 533–35, 610 A.2d 1113 (1992) (This court concluded that the challenged statements "plainly" concerned a matter different than the defendant's failure to testify, and that, "[a]lthough it is possible that the jury drew [an improper] conclusion, such a strained interpretation of the state's argument by the jury would be neither necessary nor natural. . . . We believe the challenged remarks on rebuttal could only be reasonably interpreted as commentary by the prosecutor on the overall quality of the defendant's evidence and not as calling specific attention to the failure of the accused to testify." [Citations omitted; internal quotation marks omitted.]); *State* v. *Negron*, 221 Conn. 315, 325, 603 A.2d 1138 (1992) (This court concluded "that the prosecutor's remarks would reasonably have been interpreted by the jury, not as a comment on the defendant's failure to testify, but rather to have been an observation that the defendant, who knew what had happened, had informed three others that he had shot someone . . . that the three in turn had testified as to what they had been told, and that the jury, therefore, had for its consideration the defendant's own account of what had transpired. That, indeed, appears to be the more cogent construction to be attributed to the prosecutor's argument.").[4] Thus, *Donnelly* does not support the majority's approach in the present case.

The question, therefore, is what is the proper approach when a prosecutor's remarks are susceptible to more than one interpretation, one of which is improper. For the reasons previously stated, the inquiry must focus on the jury's perception of the remarks and not the prosecutor's intention in making them. Moreover, the interpretation must be more than simply plausible, but one that the jury is reasonably likely to adopt. At the two polar extremes—where the jury clearly is unlikely or likely to adopt one interpretation—the issue of impropriety is readily determined. In between these

polar extremes are cases in which there is more than one reasonable interpretation. In such cases, it is reasonably possible that the jury understood the remark to encourage it to decide the case on an improper basis. Although the defendant bears the burden of proving that it is more likely than not that an impropriety occurred, for the reasons that follow, I would assume impropriety in such cases and address the effect of the ambiguity in the second step in our prosecutorial impropriety analysis. See *State* v. *Taft*, 306 Conn. 749, 762, 51 A.3d 988 (2012) (two step analytical process considers "[1] whether [impropriety] occurred in the first instance; and [2] whether that [impropriety] deprived a defendant of his due process right to a fair trial" [internal quotation marks omitted]). By deeming remarks proper that reasonably could be understood by the jury as advancing an improper argument, we would encourage prosecutors to couch argument in ambiguous language to avoid admonishment, without reducing the risk that the jury may have interpreted the comments as directing it to decide the case on an improper basis. Because "[t]he prosecutor, as a representative of the state, has a duty of fairness that exceeds that of other advocates"; (internal quotation marks omitted) *State* v. *Payne*, 260 Conn. 446, 452, 797 A.2d 1088 (2002); we should deem argument improper when it is crafted in terms that are readily susceptible to misinterpretation for an improper purpose. Indeed, when argument is equally likely to be interpreted in a damaging way as a proper way, the defendant may not have met his burden of proof, but such argument should not be characterized as proper. By deeming such ambiguous comments improper, we put the prosecutor on notice that a pattern of such obfuscation, even if insufficient to give rise to grounds for reversal on due process grounds in a particular case, could constitute grounds for reversal under the exercise of our supervisory authority in the future. See, e.g., id., 450–52.

In considering whether a due process violation has occurred, it makes sense to consider the nature of the ambiguity (plausibly, reasonably, or likely to be understood in damaging way) in connection with factors addressing the frequency and severity of the impropriety, as well as the effect of curative instructions. See, e.g., *Muhammad* v. *McNeil*, 352 Fed. Appx. 371, 375–76 (11th Cir. 2009) (stating in connection with second step in prosecutorial impropriety analysis: "[i]n determining whether arguments are sufficiently egregious to result in the denial of due process, we consider factors including: [1] whether the remarks were isolated, *ambiguous*, or unintentional; [2] whether there was a contemporaneous objection by defense counsel; [3] the trial court's instructions; and [4] the weight of aggravating and mitigating factors" [emphasis added; internal quotation marks omitted]), cert. denied, 559 U.S. 1052, 130 S. Ct. 2350, 176 L. Ed. 2d 568 (2010); *United States* v. *Cabal-*

*lero*, 277 F.3d 1235, 1245 (10th Cir. 2002) (concluding in due process analysis that "we find it unlikely that the prosecutor's single, ambiguous remark substantially influenced the jury in light of the overwhelming evidence presented against the [defendants]"). Under such a framework, a determination of whether the ambiguous remarks were frequent would properly focus on the likely effect of the remarks instead of the prosecutor's intention in making them. Moreover, curative instructions would be relevant to whether any ambiguity was sufficiently dispelled. Although analyzing ambiguity under either step of our analysis likely would yield the same result, because the defendant still must prove that it is more likely than not that the jury adopted the adverse interpretation, I am persuaded that analyzing all but the most obvious cases under the second step is most faithful to vindicating due process concerns.

In the present case, however, Pepper's remarks clearly were improper, but did not deprive the defendant of a fair trial. Accordingly, I join the majority only insofar as it reverses the judgment of the Appellate Court reversing the defendant's judgment of conviction.

I respectfully concur.

[1] In addition to a comment referring to matters not in evidence, which the majority agrees was improper, most significantly, Pepper stated that since the day the victim confided in her guidance counselor, the victim has "been in foster care, but that didn't end the trauma, ladies and gentlemen. She was interviewed by strangers. She was poked and prodded by doctors and nurses. She had a miscarriage. And she had to *relive the whole experience here, facing you and the defendant, and telling you what happened to her over the period of four years.* And she had to recite to you who she had sex with and who she hasn't, *because of what that man did to her and said about her during the investigation* of this case. I *had to ask her* . . . did you ever post a photograph of yourself on the web with a penis in your face? I had to ask her that question in front of strangers, because of *what that man said and did to her.*" (Emphasis added.)

In rebuttal argument, Pepper gave his personal opinion about the defendant's guilt when he further stated: "Every time he slandered her, we find out it's not true. Why? Why this campaign of disinformation against his daughter? Well, I submit, ladies and gentlemen, *what would you expect from someone who molests a twelve year old,* even your own daughter? I submit, ladies and gentlemen, he was trying to deceive and deflect the investigation of this case from the very beginning." (Emphasis added.)

[2] See *State* v. *Ceballos*, 266 Conn. 364, 367, 832 A.2d 14 (2003) (reversing judgment on due process grounds due to improper conduct by Pepper during questioning of witnesses and closing argument); *State* v. *Payne*, 260 Conn. 446, 447–49, 797 A.2d 1088 (2002) (reversing judgment under supervisory authority due to improper comments by Pepper during closing argument); *State* v. *Butler*, 255 Conn. 828, 829–30, 769 A.2d 697 (2001) (affirming Appellate Court's judgment reversing conviction on due process grounds due to improper comments by Pepper during closing argument); see also *State* v. *Moody*, 77 Conn. App. 197, 217–18, 822 A.2d 990 (concluding that Pepper improperly asked defendant to comment on veracity of other witnesses but concluding that impropriety did not deprive defendant of fair trial), cert. denied, 264 Conn. 918, 827 A.2d 707, cert. denied, 540 U.S. 1058, 124 S. Ct. 831, 157 L. Ed. 2d 714 (2003); *State* v. *Lacks*, 58 Conn. App. 412, 422–24, 755 A.2d 254 (recognizing that Pepper improperly commented on credibility of witnesses in closing argument but concluding that remarks were not so pervasive or egregious to have violated defendant's right to fair trial), cert. denied, 254 Conn. 919, 759 A.2d 1026 (2000).

[3] In its responsive brief to this court, the defendant summarily suggests that this court could affirm the Appellate Court's judgment reversing the defendant's conviction on the alternative basis of this court's supervisory authority. The defendant did not file a statement of an alternative ground

for affirmance, and the state did not have notice to address this claim in its main brief. Therefore, I decline to address whether reversal is warranted on this alternative ground. Had such a claim been raised and adequately briefed, the past history of the senior assistant state's attorney may have weighed heavily in favor of the exercise of such authority.

[4] To address the specific concern of whether the prosecutor improperly has commented on the defendant's failure to testify versus whether the prosecutor has properly and reasonably commented on the defendant's failure to rebut the state's evidence, courts have adopted the following standard: "In determining whether a prosecutor's comments have encroached upon a defendant's right to remain silent, we ask: Was the language used manifestly intended to be, or was it of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify?" (Internal quotation marks omitted.) *State* v. *Ruffin*, 316 Conn. 20, 29, 110 A.3d 1225 (2015). The "naturally and necessarily" standard has been limited to this particular concern and not extended to other alleged impropriety in argument. See, e.g., *State* v. *Grant*, 286 Conn. 499, 537–47, 944 A.2d 947, cert. denied, 555 U.S. 916, 129 S. Ct. 271, 172 L. Ed. 2d 200 (2008); *State* v. *Rowe*, 279 Conn. 139, 144–61, 900 A.2d 1276 (2006); *State* v. *Satchwell*, 244 Conn. 547, 563–72, 710 A.2d 1348 (1998); *State* v. *Crump*, 145 Conn. App. 749, 754–61, 75 A.3d 758, cert. denied, 310 Conn. 947, 80 A.3d 906 (2013); *State* v. *Johnson*, 107 Conn. App. 188, 199–202, 944 A.2d 416, cert. denied, 288 Conn. 905, 953 A.2d 650 (2008); *State* v. *Palmer*, 78 Conn. App. 418, 423–28, 826 A.2d 1253, cert. denied, 266 Conn. 913, 833 A.2d 465 (2003).