******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* RODNEY CHASE
(AC 36124)
(AC 36125)

Lavine, Alvord and Bishop, Js.

*Argued September 17—officially released December 23, 2014*

(Appeal from Superior Court, judicial district of
Waterbury, Prescott, J.)

*Howard I. Gemeiner*, for the appellant in AC 36124
and the appellee in AC 36125 (defendant).

*Timothy F. Costello*, assistant state's attorney, with
whom, on the brief, were *Maureen Platt*, state's attorney, and *Catherine Brannelly Austin*, senior assistant
state's attorney, for the appellee in AC 36124 and the
appellant in AC 36125 (state).

*Opinion*

BISHOP, J. This appeal and cross appeal arise from the same underlying criminal action. Although they have not been consolidated, we write one opinion for purposes of judicial economy in which we assess the claims made in both appeals.

In AC 36124, the defendant, Rodney Chase, appeals from the judgment of conviction, rendered following a jury trial, of one count of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2) and one count of risk of injury to a child in violation of General Statutes § 53-21 (a) (2). The defendant claims that (1) his due process rights were violated as a result of improper remarks made by the prosecutor during closing argument, and (2) there was insufficient evidence to convict him of sexual assault in the first degree. We disagree and, accordingly, affirm the judgment of the trial court as to the defendant's convictions for sexual assault in the first degree and risk of injury to a child.

In AC 36125, the state appeals from the trial court's vacatur of the jury's guilty verdicts on two counts of sexual assault in the fourth degree in violation of General Statutes § 53a-73a (a) (1) (A). The state claims that the court abused its discretion by its order of vacatur on the basis of the state's assertion that the court's instructional errors were harmless. We agree and, accordingly, reverse the judgment of the trial court in regard to those two counts.

The matter was tried over the course of three days in June, 2013, during which the jury reasonably could have found the following facts. Between November, 2011, and March, 2012, the defendant was a houseguest in the home of M.R. and his wife, R.N. M.R. and R.N.'s daughter, Z, the victim, and their three year old son, M Jr., also lived in the home.[1] One evening after Christmas, 2011, the defendant was lying on a couch in the livingroom, clothed and covered with a sheet. Z and M Jr. were lying on a nearby loveseat watching television. The defendant asked the two children to join him on the larger couch. Z lay down alongside the defendant under the blanket, while M Jr. curled up at the foot of the couch. As Z lay next to the defendant, he began rubbing Z's buttocks and private parts over her clothing with his hand. He then pulled down Z's pajama pants and underwear, and inserted one of his fingers into Z's vagina. Z left the couch and fled to the bathroom.

The defendant moved out of Z's home in March, 2012. Approximately three weeks later, Z disclosed to her parents what had happened with the defendant, and Z's parents contacted the police. The defendant was arrested and charged, by way of an amended information, with sexual assault in the first degree in violation of § 53a-70 (a) (2), two counts of sexual assault in the

fourth degree in violation of § 53a-73a (a) (1) (A), and risk of injury to a child in violation of § 53-21 (a) (2). At the conclusion of the trial, the jury found the defendant guilty on all counts. Before the court imposed the defendant's sentence, it vacated the jury's verdicts on the two charges of sexual assault in the fourth degree, due to an error in the jury instructions related to those charges. As to the remaining convictions for sexual assault in the first degree and risk of injury to a child, the court sentenced the defendant to a total effective term of ten years incarceration and ten years special parole. This appeal and cross appeal followed.

I

AC 36124

As noted, the defendant raises two claims on appeal with respect to his convictions for sexual assault in the first degree and risk of injury to a child. First, he claims that his due process rights were violated as a result of improper remarks made by the prosecutor during closing argument. Second, the defendant argues that there was insufficient evidence to convict him of sexual assault in the first degree. We consider each claim in turn.

A

Prosecutorial Impropriety

We first turn to the defendant's claim that his due process rights were violated as a result of improper remarks made by the prosecutor during closing argument. Specifically, he argues that the prosecutor inappropriately appealed to the emotions of the jurors and improperly vouched for Z's credibility as a witness.

We begin by setting forth the legal principles and standard of review that guide our analysis. The standard of review governing claims of prosecutorial impropriety is well established. "In analyzing claims of prosecutorial impropriety, we engage in a two step analytical process. . . . The two steps are separate and distinct. . . . We first examine whether prosecutorial impropriety occurred. . . . Second, if an impropriety exists, we then examine whether it deprived the defendant of his due process right to a fair trial. . . . In other words, an impropriety is an impropriety, regardless of its ultimate effect on the fairness of the trial. Whether that impropriety was harmful and thus caused or contributed to a due process violation involves a separate and distinct inquiry." (Citations omitted.) *State* v. *Fauci*, 282 Conn. 23, 32, 917 A.2d 978 (2007). "An appellate court's determination of whether any improper conduct by the prosecutor violated the defendant's right to a fair trial is predicated on the factors established in *State* v. *Williams*, 204 Conn. 523, 540, 529 A.2d 653 (1987). Those factors include the extent to which the [impropriety] was invited by defense conduct or argument . . . the severity of the [impropriety] . . . the frequency of the

[impropriety] . . . the centrality of the [impropriety] to the critical issues in the case . . . the strength of the curative measures adopted . . . and the strength of the state's case." (Internal quotation marks omitted.) *State* v. *Lynch*, 123 Conn. App. 479, 503, 1 A.3d 1254 (2010). "[If] a defendant raises on appeal a claim that improper remarks by the prosecutor deprived the defendant of his constitutional right to a fair trial, the burden is on the defendant to show . . . that the remarks were improper . . . ." (Internal quotation marks omitted.) *State* v. *Taft*, 306 Conn. 749, 762, 51 A.3d 988 (2012).

Because the claimed prosecutorial improprieties occurred during closing arguments, we advance the following legal principles. "[P]rosecutorial [impropriety] of a constitutional magnitude can occur in the course of closing arguments. . . . In determining whether such [an impropriety] has occurred, the reviewing court must give due deference to the fact that [c]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument. . . . Thus, as the state's advocate, a prosecutor may argue the state's case forcefully, [provided the argument is] fair and based upon the facts in evidence and the reasonable inferences to be drawn therefrom." (Internal quotation marks omitted.) *State* v. *Miller*, 128 Conn. App. 528, 535, 16 A.3d 1272, cert. denied, 301 Conn. 924, 22 A.3d 1279 (2011).

"Nevertheless, the prosecutor has a heightened duty to avoid argument that strays from the evidence or diverts the jury's attention from the facts of the case. [The prosecutor] is not only an officer of the court, like every attorney, but is also a high public officer, representing the people of the [s]tate, who seek impartial justice for the guilty as much as for the innocent. . . . By reason of his office, he usually exercises great influence [on] jurors. His conduct and language in the trial of cases in which human life or liberty [is] at stake should be forceful, but fair, because he represents the public interest, which demands no victim and asks [for] no conviction through the aid of passion, prejudice, or resentment. If the accused [is] guilty, he should [nonetheless] be convicted only after a fair trial, conducted strictly according to the sound and well-established rules which the laws prescribe. [Although] the privilege of counsel in addressing the jury should not be too closely narrowed or unduly hampered, it must never be used as a license to state, or to comment [on], or to suggest an inference from, facts not in evidence, or to present matters which the jury ha[s] no right to consider." (Internal quotation marks omitted.) *State* v. *Maguire*, 310 Conn. 535, 553–54, 78 A.3d 828 (2013).

Finally, although the defendant failed to object at

trial to the remarks that form the basis of his appeal, our Supreme Court has explained that a "defendant's failure to object at trial to each of the occurrences that he now raises as instances of prosecutorial impropriety, though relevant to our inquiry, is not fatal to review of his claims. . . . This does not mean, however, that the absence of an objection at trial does not play a significant role in the determination of whether the challenged statements were, in fact, improper. . . . To the contrary, we continue to adhere to the well established maxim that defense counsel's failure to object to the prosecutor's argument when it was made suggests that defense counsel did not believe that it was [improper] in light of the record of the case at the time." (Internal quotation marks omitted.) *State* v. *Medrano*, 308 Conn. 604, 612–13, 65 A.3d 503 (2013). With this maxim in mind, we proceed with our review of the defendant's claims.

1

The defendant first claims that the prosecutor made a number of improper comments during closing argument geared to appeal to the jurors' emotions. Specifically, the defendant argues that it was improper for the prosecutor to comment on the hardships that Z endured in reporting the incident and then testifying about it in court. In response, the state contends that the comments in question were not an appeal to the jurors' emotions, but simply an effort to focus the jury's attention on the facts in evidence and the commonsense inferences that could be drawn from such facts.

"[I]t is well established that, [a] prosecutor may not appeal to the emotions, passions and prejudices of the jurors. . . . [S]uch appeals should be avoided because they have the effect of diverting the jury's attention from their duty to decide the case on the evidence. . . . When the prosecutor appeals to emotions, he invites the jury to decide the case, not according to a rational appraisal of the evidence, but on the basis of powerful and irrelevant factors which are likely to skew that appraisal." (Citation omitted; internal quotation marks omitted.) *State* v. *Crump*, 145 Conn. App. 749, 755, 75 A.3d 758, cert. denied, 310 Conn. 947, 80 A.3d 906 (2013). Our Supreme Court has held, however, that "[i]t is not improper for the prosecutor to comment [on] the evidence presented at trial and to argue the inferences that the jurors might draw therefrom . . . . We must give the jury the credit of being able to differentiate between argument on the evidence and attempts to persuade them to draw inferences in the state's favor, on one hand, and improper unsworn testimony, with the suggestion of secret knowledge, on the other hand." (Internal quotation marks omitted.) *State* v. *Fauci*, supra, 282 Conn. 36. Therefore, "[a] prosecutor is not expressing his personal opinion when he or she states factual evidence and reasonable inferences tending to

support a finding that the defendant is guilty." *State* v. *James*, 141 Conn. App. 124, 143, 60 A.3d 1011, cert. denied, 308 Conn. 932, 64 A.3d 331 (2013).

The first statement at issue occurred in the middle of the prosecutor's closing argument, when the prosecutor commented on the amount of times Z was interviewed by noting that Z was interviewed only once "to save the child the trauma of having to repeat again and again." The defendant argues that this statement was an improper appeal to the emotions of the jurors.

The state responds that the prosecutor's statement was not an impermissible appeal to the jurors' emotions, but rather a response to the evidence put forth by the defendant. "When reviewing a claim of prosecutorial impropriety, we do not scrutinize each individual comment in a vacuum but, rather, review the comments complained of in the context of the entire trial." (Internal quotation marks omitted.) *State* v. *Fauci*, supra, 282 Conn. 45. During the defendant's presentation of evidence, Suzanne Sgroi testified as an expert witness with a background in interviewing victims of sexual abuse. In her testimony, Sgroi repeatedly criticized how Z had been interviewed, specifically commenting on the fact that Z was interviewed only one time following the incident. In her closing argument, the prosecutor referred to Sgroi's testimony and explained that Z was interviewed only once in order to save Z the trauma of having to retell her story multiple times. The record of the trial supports the state's claim that the prosecutor's statement was meant to explain why Z was interviewed only once, and not to appeal to the jurors' emotions as claimed by the defendant.

Next, the defendant claims that toward the end of the prosecutor's closing argument, she improperly addressed the difficulty that Z faced when disclosing the incident, stating: "And when she comes into the courtroom to testify in front of you, she says her first thing is I'm not really comfortable talking about this." The defendant argues that this statement was an improper appeal to the jurors' emotions made in an effort to provoke the jury's ire against the defendant.

In assessing whether the prosecutor's statement in question can properly be characterized as an impropriety, we bear in mind that, as an advocate, "the prosecutor permissibly may employ forceful arguments based upon the facts in evidence and the reasonable inferences drawn from such facts." (Internal quotation marks omitted.) *State* v. *Kendall*, 123 Conn. App. 625, 637, 2 A.3d 990, cert. denied, 299 Conn. 902, 10 A.3d 521 (2010). Here, there was sufficient evidence presented from which the jury could draw a reasonable inference that it was difficult for Z to talk about the incident. During the course of her forensic interview and her in-court testimony, Z stated several times that she did not feel comfortable explaining where on her

body the defendant had touched her. Accordingly, the prosecutor's statement about Z being uncomfortable in the courtroom had an evidentiary foundation and was, therefore, within the bounds of reasonable advocacy.

The third set of statements made by the prosecutor assailed by the defendant relate to the prosecutor's discussion of the hardships that Z endured after the incident. The prosecutor stated: "Well, here she is telling what happened to her and [the defendant]. So she's had to go talk to Donna Meyer, she's had to come into court to testify, and she's had to go through an examination by Dr. Fountas. An OB-GYN examination. Is enough said on that topic? How pleasant are those types of exams? Not only has she had to undergo that exam by Dr. Fountas, but that part of Z's body was a crime scene." As with the previous statements, the defendant argues that these statements constituted an effort by the prosecutor to elicit sympathy for Z from the jurors.

This court has deemed proper similar comments regarding gynecological examinations "in which a prosecutor asked jurors to use their common sense to infer that an individual's complaint was more credible because it required her to undergo an uncomfortable medical examination . . . ." *State* v. *Crump*, supra, 145 Conn. App. 758. As we have previously established, "[i]t is not improper for the prosecutor to comment upon the evidence presented at trial and to argue the inferences that the jurors might draw therefrom . . . ." (Internal quotation marks omitted.) Id., 760 n.4. Here, the prosecutor's statement could reasonably be understood as an effort to ask the jurors to apply common sense in assessing whether Z likely would fabricate the allegations.

The final set of statements made by the prosecutor that the defendant claims were intended to inflame the passions of the jurors were as follows: "A crime scene. . . . Ladies and gentlemen, not only did her body become a crime scene, but she had to come into court and talk to all of you, and I want you to think about this for a minute. You having to come into court and testifying in front of eight jurors, two of which are men, a male judge, a clerk, a stenographer, a marshal, the defendant, the defense attorney, spectators in the gallery, the inspector, me, about a sexual incident? How would you feel if you had to come in and testify about that? . . . So how do you think Z felt at eight years old to have to come in and talk about this very personal event in her life?"

Guidance from decisional law does not support the defendant's argument in this regard. Our Supreme Court previously has deemed proper "comments in which a prosecutor asked jurors to use their common sense to infer that [a victim's] complaint was more credible because it required her to undergo . . . embarrassing

conversations with both her family members and complete strangers . . . ." *State* v. *Long*, 293 Conn. 31, 48, 975 A.2d 660 (2009). In *State* v. *Crump*, supra, 145 Conn. App. 759, the prosecutor had asked the following rhetorical question: "How hard was that for [the victim] to tell? How hard was any of this for her to tell you?" (Internal quotation marks omitted.) This court held that these statements were not an improper appeal to the jurors' emotions because "[t]he prosecutor was seeking to reference the crime's impact on the victim as it related to her failure to make a prompt disclosure of the incidents . . . ." Id. Further, this court opined that "there was ample evidence presented from which the jury could draw a reasonable inference that it was difficult for the victim to talk about the incidents and that she wanted to leave the courtroom." Id. In the present case, as in *Crump*, the prosecutor was not appealing to the jurors' emotions or sympathies. Rather, the prosecutor was asking the jurors to make a common sense inference that Z would not have spoken to her parents about the incident or testified about it in court if it had not actually happened. The prosecutor's statements were not improper.

In sum, the prosecutor's statements during her closing argument did not constitute impermissible appeals to the jurors' emotions.

2

Next, the defendant claims that, during closing argument, the prosecutor improperly vouched for Z's veracity. More specifically, the defendant claims that the prosecutor violated the defendant's constitutional right to cross-examine his accuser by testifying to Z's credibility in the guise of closing argument. In response, the state argues that the prosecutor's statements were only an appeal to the jurors' common sense and that their propriety can be seen in the light of the evidence adduced at trial. The state contends that, in making the statements in question, the prosecutor was simply asking that the jurors find Z's testimony more credible on the basis of the difficulty she had in reporting the incident and then testifying about it in court.

The following additional facts are relevant to our resolution of the defendant's claim. In her closing argument, the prosecutor argued to the jury that Z's testimony had been consistent throughout her conversations with her parents, her forensic interview, and her testimony in court. Specifically, the prosecutor stated: "Z, I would argue, is consistent in her testimony on Tuesday in front of you, it is consistent with the testimony that she already—interview that she gave to Donna Meyers, is consistent with the information that she gave her mother and her father, and the reason why she is, is because she is being truthful with you." Further, the prosecutor stated: "[Z] told you truthfully what happened with [the defendant] . . . ."

"[The Supreme Court] consistently [has] held that it is improper for a prosecuting attorney to express his or her own opinion, directly or indirectly, as to the credibility of witnesses. . . . Such expressions of personal opinion are a form of unsworn and unchecked testimony, and are particularly difficult for the jury to ignore because of the prosecutor's special position. . . . Put another way, the prosecutor's opinion carries with it the imprimatur of the [state] and may induce the jury to trust the [state's] judgment rather than its own view of the evidence. . . . Moreover, because the jury is aware that the prosecutor has prepared and presented the case and consequently, may have access to matters not in evidence . . . it is likely to infer that such matters precipitated the personal opinions." (Citation omitted; internal quotation marks omitted.) *State* v. *Long*, supra, 293 Conn. 38.

At the same time, "[t]he prosecutor . . . is not barred from commenting on the evidence presented at trial or urging the jury to draw reasonable inferences from the evidence that support the state's theory of the case, including the defendant's guilt. It is not improper for the prosecutor to comment [on] the evidence presented at trial and to argue the inferences that the [jury] might draw therefrom . . . . We must give the jury the credit of being able to differentiate between argument on the evidence and attempts to persuade [it] to draw inferences in the state's favor, on one hand, and improper unsworn testimony, with the suggestion of secret knowledge, on the other hand. The [prosecutor] should not be put in the rhetorical straitjacket of always using the passive voice, or continually emphasizing that he is simply saying I submit to you that this is what the evidence shows, or the like." (Internal quotation marks omitted.) Id., 38–39.

Based on our review of the record, we conclude that the defendant's claim raises a close question of whether the prosecutor's statements regarding Z's credibility crossed the line into vouching for her truthfulness. Even assuming, without deciding, however, that these statements run afoul of the proscription against vouching for a witness' credibility, we conclude that they did not deprive the defendant of a fair trial.

"[T]he touchstone of due process analysis in cases of alleged prosecutorial [impropriety] is the fairness of the trial, and not the culpability of the prosecutor. . . . The issue is whether the prosecutor's conduct so infected the trial with unfairness as to make the resulting conviction a denial of due process." (Internal quotation marks omitted.) *State* v. *Schiavo*, 93 Conn. App. 290, 307, 888 A.2d 1115, cert. denied, 277 Conn. 923, 895 A.2d 797 (2006). As noted, "[a]n appellate court's determination of whether any improper conduct by the prosecutor violated the defendant's right to a fair trial is predicated on the factors established in *State* v. *Wil-*

*liams*, [supra, 204 Conn. 540]." (Internal quotation marks omitted.) *State* v. *Jordan*, 132 Conn. App. 817, 838, 33 A.3d 307, cert. denied, 304 Conn. 909, 39 A.3d 1119 (2012).

In the present case, pursuant to our analysis of the *Williams* factors, we are not persuaded that the remarks made by the prosecutor regarding Z's veracity as a witness deprived the defendant of his due process right to a fair trial. Under the first *Williams* factor, the state argues, and we agree, that the defendant placed Z's credibility in question when he presented Sgroi's testimony regarding the forensic interview. According to the state, this testimony called into question the truthfulness of Z's statements to her parents, her statements to Meyer during the forensic interview, and her testimony at trial. We agree that the prosecutor's remarks were invited by testimony elicited by the defense regarding Z's prior statements. With respect to the second and third *Williams* factors, the state contends that the alleged impropriety occurred only twice during the prosecutor's closing argument and was not a theme throughout the trial or even throughout the closing argument. See *State* v. *Johnson*, 107 Conn. App. 188, 203, 944 A.2d 416 (impropriety not severe under the second *Williams* factor when confined to limited portion of closing argument), cert. denied, 288 Conn. 905, 953 A.2d 650 (2008). The record supports the state's claim in this regard. Furthermore, we note that the defendant did not object to the prosecutor's comments during closing argument. Although the absence of an objection is not determinative, "[w]e consider it highly significant that defense counsel failed to object to any of the improper remarks, request curative instructions, or move for a mistrial. Defense counsel, therefore, presumably [did] not view the alleged impropriety as prejudicial enough to seriously jeopardize the defendant's right to a fair trial. . . . Given the defendant's failure to object, only instances of grossly egregious [impropriety] will be severe enough to mandate reversal." (Internal quotation marks omitted.) *State* v. *Bermudez*, 274 Conn. 581, 600–601, 876 A.2d 1162 (2005).

As to the fourth and fifth *Williams* factors, the state claims that although the statements at issue did touch upon a central issue in the case, namely Z's credibility, the court's instructions on witness credibility cured any possible harm to the defendant's right to a fair trial. We agree that the statements at issue touched upon a central issue in the case, as the state's entire case against the defendant relied on Z's credibility. The court did, however, provide the standard instruction to the jury regarding the role of counsel's arguments and the relationship between evidence and argument.[2] These instructions were proper and given without objection or any request for augmentation. See *State* v. *Crump*, supra, 145 Conn. App. 764 ("[w]hile the state's case relied on the credibility of a sole witness, the jury prop-

erly was instructed that the statements and argument of counsel are not evidence and that it should not resort to sympathy in deciding the case")

Finally, with regard to the sixth *Williams* factor, the state argues that its case was strong enough so that any alleged impropriety did not deprive the defendant of a fair trial. Our Supreme Court has noted that "a child sexual abuse case lacking conclusive physical evidence, when the prosecution's case rests on the credibility of the victim . . . is not particularly strong . . . ." (Internal quotation marks omitted.) *State* v. *Warholic*, 278 Conn. 354, 397, 897 A.2d 569 (2006). At the same time, "[t]he state's evidence does not need to be overwhelming to support a conclusion that prosecutorial impropriety did not deprive the defendant of a fair trial." *State* v. *Felix*, 111 Conn. App. 801, 816, 961 A.2d 458 (2008). Therefore, although we agree with the defendant that the state's case was not particularly strong, the defendant was not deprived of the right to a fair trial under the circumstances evidenced by this record.

Based on the foregoing, we conclude that the prosecutor's statements during her closing argument regarding Z's credibility, even if improper, did not deprive the defendant of his right to a fair trial.

B

Insufficient Evidence

Next, the defendant claims that the court improperly convicted him of sexual assault in the first degree because the evidence was insufficient to prove the necessary element of sexual intercourse. Specifically, the defendant contends that the state failed to present any evidence of penetration from which the jury could conclude that he engaged in sexual intercourse with Z.

We begin by setting forth the legal principles and standard of review that guide our analysis. "In reviewing the sufficiency of the evidence to support a criminal conviction we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"We note that the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, [but] each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime

charged beyond a reasonable doubt. . . .

"Moreover, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence. . . . In evaluating evidence, the [finder] of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The [finder of fact] may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . .

"Finally, [a]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the [finder of fact], would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [finder of fact's] verdict of guilty." (Internal quotation marks omitted.) *State* v. *Davis*, 283 Conn. 280, 329–30, 929 A.2d 278 (2007).

Section 53a-70 (a) provides in relevant part: "A person is guilty of sexual assault in the first degree when such person . . . (2) engages in sexual intercourse with another person and such other person is under thirteen years of age and the actor is more than two years older than such person . . . ." The defendant claims that the state failed to prove beyond a reasonable doubt that the defendant engaged in sexual intercourse with Z. General Statutes § 53a–65 (2) defines "sexual intercourse" in relevant part as "vaginal intercourse . . . between persons regardless of sex. . . . Penetration, however slight, is sufficient to complete vaginal intercourse . . . and does not require emission of semen. Penetration may be committed by an object manipulated by the actor into the genital . . . opening of the victim's body." "Connecticut follows the common-law least penetration doctrine in that the phrase [p]enetration, however slight . . . was intended to cover penetration of the labia majora." (Internal quotation marks omitted.) *State* v. *Juan V.*, 109 Conn. App. 431, 449, 951 A.2d 651, cert. denied, 289 Conn. 931, 958 A.2d 161 (2008).

The evidence, when construed in the light most favorable to sustaining the jury's verdict, is sufficient to sustain the defendant's conviction of sexual assault in the first degree. First, the transcript of Z's forensic interview with Meyer was admitted into evidence at trial. During this interview, Z explained that the defendant had used his fingers and touched "the inside" of the

part of her anatomy that she refers to as the "red thing." When Meyer asked Z to clarify what she meant by the "red thing," Z explained that "it doesn't come out your butt, it comes out this part." Next, the court admitted the videotape of the forensic interview between Z and Meyer. In this video, Meyer shows Z an anatomically correct doll and asks Z to point to where on the doll the "red thing" is. In response to this question, Z takes the doll and points to the inside of the doll's vagina, stating "it's inside and it's red." She further explains that the defendant was "pushing [that part] up."

In addition to the evidence of the forensic interview, the prosecution questioned Z on direct examination regarding the defendant's criminal acts. In response to questions from the prosecutor, Z described the defendant's penetration of her genitalia in the following manner:

"Q. What did [the defendant] do when he pulled down your bottoms?

"A. He touched me.

"Q. What did he touch you with?

"A. His hand.

"Q. And what part of your body did he touch?

"A. The front.

"Q. Was—did he touch the inside, the outside, or something else of the front of you?

"A. The inside.

"Q. What do you call that part?

"A. I don't feel comfortable saying it.

"Q. It's safe to say it in this room.

"A. A pee pee, I guess.

"Q. And how—where did [the defendant] put his hand when he touched your pee pee?

"A. I don't understand.

"Q. Did he put his hand inside or outside or something else of your pee pee?

"A. Inside."

In addition, the prosecutor showed Z a doll and asked her to demonstrate where the defendant had put his hand. Z showed the vaginal area of the doll and explained that the defendant "put his finger in there and went like that and pushed it up." The prosecutor asked for the record to reflect that Z had taken her index finger and placed it into the doll's vagina.

As a result of the evidence presented at trial, the jury reasonably could have determined that penetration occurred, and that, therefore, the defendant engaged in sexual intercourse with Z. Consequently, we con-

clude that the court properly convicted the defendant
of sexual assault in the first degree.

## II

### AC 36125

We next address the claim that the state raises in its
cross appeal. The state argues that the trial court abused
its discretion in vacating the jury's verdicts on the
charges of sexual assault in the fourth degree because
the court's instructional errors were harmless. Specifi-
cally, the state contends that there is no reasonable
possibility that the jury was confused or misled by the
court's misstatements and omissions in its jury instruc-
tions because, on the subject areas implicated by the
one mistake and one omission in the court's instructions
on both counts, there was uncontested and overwhelm-
ing evidence. The defendant argues, in response, that
whether to set aside a jury verdict is within the court's
discretion, which, on review, we should not disturb.[3]
We agree with the state.

The following additional facts are relevant to our
disposition of this claim. During trial, there was undis-
puted evidence that when the defendant's criminal acts
occurred, the victim was eight years old and the defen-
dant was twenty-nine years old.

On June 19, 2013, the court provided both parties
with a draft copy of the jury instructions. The following
day, after the parties had the opportunity to review the
proposed instructions, the court asked if they had any
objections or comments. Both parties replied that they
did not. Later that day, following the parties' closing
arguments, the court instructed the jury as to the essen-
tial elements of the charged crimes. As to count one,
which alleged sexual assault in the first degree, the
court instructed: "The defendant is charged in count
one of the information with sexual assault in the first
degree. The statute defining this offense reads in rele-
vant part as follows, quote, a person is guilty of sexual
assault in the first degree when such person engages
in sexual intercourse with another person and *such
other person is under thirteen years of age*, and *the
actor is more than two years older than such person*,
end quote. . . . The second element that the state must
prove beyond a reasonable doubt is that *Z was under
thirteen years of age* at the time of the sexual inter-
course. The third element the state must prove beyond
a reasonable doubt is that *the defendant is more than
two years older than Z*. In summary, the state must
prove beyond a reasonable doubt that one, sexual inter-
course took place between the defendant and Z, and
two, that at the time of the sexual intercourse, *Z had
not yet reached the age of thirteen*, and three, *the defen-
dant was more than two years older than Z*." (Empha-
sis added.)

As to counts two and three, which both alleged sexual

assault in the fourth degree, the court instructed: "The defendant is charged in count two of the information with the crime of sexual assault in the fourth degree in violation of [§] 53a-73a (a) (1) (A) of the penal code, which provides in relevant part, quote, a person is guilty of sexual assault in the fourth degree when such person intentionally subjects another person to sexual contact and *such other person is under fifteen years of age,* end quote. . . . The third element that the state must prove beyond a reasonable doubt is that at the time of the offense, *Z was under fifteen years of age.* In summary, the state must prove beyond a reasonable doubt that one, the defendant intentionally subjected Z to sexual contact by touching her genital area, two, he specifically intended to obtain sexual gratification by doing so, and three, *Z was under fifteen years of age at that time.* . . . The defendant is charged in count three of the information with the crime of sexual assault in the fourth degree in violation of [§] 53a-73a (a) (1) (A) . . . which provides in relevant part, quote, a person is guilty of sexual assault in the fourth degree when such person intentionally subjects another person to sexual contact, and *such other person is under fifteen years of age,* end quote. . . . In summary, the state must prove beyond a reasonable doubt that one, the defendant intentionally subjected Z to sexual contact by touching her buttocks, two, he specifically attempted to obtain sexual gratification by doing so, and three, *Z was under fifteen years of age at the time.*"[4] (Emphasis added.)

On June 21, 2013, the jury found the defendant guilty on all counts charged. Following the verdict, the court submitted a special interrogatory to the jury regarding the first and fourth counts. As to count one, sexual assault in the first degree, the interrogatory asked "whether or not the state has proven to you all unanimously beyond a reasonable doubt that Z was less than ten years old at the time [the defendant] committed the offense alleged in count one." As to count four, risk of injury to a child, the interrogatory asked whether "the state has proven to you all unanimously beyond a reasonable doubt that Z was less than thirteen years old at the time that [the defendant] committed that offense." The jury answered "yes" to both questions.

At the defendant's sentencing hearing on August 28, 2013, the court explained to the parties that it had discovered two errors in its jury instructions on counts two and three charging sexual assault in the fourth degree. First, the court stated it had "improperly instructed the jury as to the age of the victim that they would have to find in order to convict [the defendant] of those counts." Specifically, the court had "indicated to [the] jury . . . to convict [the defendant] of sexual assault in the fourth degree when such person intentionally subjects another person to sexual contact and such other person is under fifteen years of age." Second, the

court had failed to "instruct the jury that they must find that [the defendant] was more than two years older than [Z] at the time of the alleged offense." Pursuant to § 53a-73a (a) (1) (A), a defendant commits sexual assault in the fourth degree when he or she "subjects another person to sexual contact who is . . . under thirteen years of age and the actor is more than two years older than such other person . . . ." The court reasoned that it could either vacate the convictions on counts two and three or conclude that the improper instructions were harmless error and let the convictions stand. In sum, the court misstated the statutory age set forth in § 53a-73a regarding a potential victim, and the court neglected to state the statutory requirement that, for one to be guilty of the statute's proscriptions, a perpetrator must be more than two years older than the victim.

After hearing arguments from both parties, the court vacated the convictions on counts two and three. The court reasoned that, because no judgment of conviction had been rendered, it wanted to "craft a sentence on the remaining charges that reflect[ed] the fact that the jury was improperly instructed on the essential elements of two of the counts." On September 27, 2013, the court granted the state permission to appeal the vacatur of these two convictions, and the state subsequently filed this appeal on October 7, 2013.

On appeal, the state claims that the court's instructional errors were patently harmless, and, therefore, the court abused its discretion in granting the defendant a new trial as to those counts. In response, the defendant argues that the court properly exercised its discretion in vacating the convictions.

"[T]he proper appellate standard of review when considering the action of a trial court granting or denying a motion to set aside a verdict and motion for a new trial . . . [is] the abuse of discretion standard. . . . In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done. . . . We do not . . . determine whether a conclusion different from the one reached could have been reached. . . . A verdict must stand if it is one that a jury reasonably could have returned and the trial court has accepted." (Internal quotation marks omitted.) *State* v. *Vazquez*, 119 Conn. App. 249, 252, 987 A.2d 1063 (2010).

On the other hand, the court's broad latitude of discretion is not unbounded. An abuse of discretion standard "encompasses a determination of whether the court applied the correct law to the facts. . . . [Thus, our] review of such rulings is limited to the questions of whether the trial court correctly applied the law and

reasonably could have reached the conclusion that it did." (Citation omitted; internal quotation marks omitted.) *Monti* v. *Wenkert*, 287 Conn. 101, 111 n.2, 947 A.2d 261 (2008). Put another way, "[t]he trial court possesses inherent power to set aside a jury verdict which, in the court's opinion, is against the law or the evidence. . . . [The trial court] should not set aside a verdict where it is apparent that there was some evidence upon which the jury might reasonably reach [its] conclusion, and should not refuse to set it aside where the manifest injustice of the verdict is so plain and palpable as clearly to denote that some mistake was made by the jury in the application of legal principles . . . . Ultimately, [t]he decision to set aside a verdict entails the exercise of a broad legal discretion . . . that, in the absence of clear abuse, we shall not disturb." (Internal quotation marks omitted.) Id., 110–11.

When a claim of instructional error is implicated on appeal, the law that guides our review is clear. "A defendant is constitutionally entitled to have the jury instructed on the essential elements of the crime charged and to be acquitted unless proven guilty of each element beyond a reasonable doubt. . . . It is well established that a defect in a jury charge [that] raises a constitutional question is reversible error if it is reasonably possible that, considering the charge as a whole, the jury was misled. . . . [T]he test for determining whether a constitutional error is harmless . . . is whether it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained. . . . [A] jury instruction that improperly omits an essential element from the charge constitutes harmless error if a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Thompson*, 305 Conn. 806, 815, 48 A.3d 640 (2012).

Our Supreme Court has held that an instructional error "will be deemed harmless if the verdict rendered by the jury on another count of the information necessarily was predicated on factual findings that also were required for a finding of a violation of [the statute at issue] . . . or if the state can establish beyond a reasonable doubt that, in light of the undisputed and overwhelming evidence, the jury verdict would have been the same in the absence of the error." (Citations omitted.) *State* v. *Patterson*, 276 Conn. 452, 477, 886 A.2d 777 (2005); see also *State* v. *Davis*, 255 Conn. 782, 793–96, 772 A.2d 559 (2001) (trial court's failure to instruct jury regarding elements of sentence enhancement statute was harmless because first element of statute was established in previous count and second element was established by uncontested and overwhelming evidence); *State* v. *Montgomery*, 254 Conn. 694, 735–38,

759 A.2d 995 (2000) (trial court's failure to instruct jury on elements of sentence enhancement statute harmless beyond reasonable doubt).

In the present case, it is undisputed that the trial court improperly instructed the jury on two of the essential elements of § 53a-73a (a) (1) (A). As to the first element, the age of the victim, the court misstated the law by instructing the jury that in order to find the defendant guilty of sexual assault in the fourth degree, it must find that Z was "under fifteen years of age." Pursuant to § 53a-73a (a) (1) (A), the victim must actually be "under thirteen years of age . . . ." During the trial, Z appeared in front of the jury and testified that she was born in 2004.[5] Z's father also testified that Z was born in 2004. None of the evidence regarding Z's age was contested. Therefore, the unchallenged evidence at trial was that Z could not have been any older than eight at the time of the incident, which occurred sometime between November, 2011 and March, 2012. Furthermore, at the conclusion of the trial, the jury found the defendant guilty of sexual assault in the first degree pursuant to § 53a-70 (a), which requires a finding that the victim was under thirteen years of age when the assaults occurred. Finally, following the verdict, the jury answered special interrogatories and found the following: (1) Z was less than ten years old at the time the defendant committed sexual assault in the first degree; and (2) Z was less than thirteen years old at the time the defendant committed risk of injury to a child. Accordingly, we conclude that there was uncontested and overwhelming evidence that Z was under thirteen years of age at the time of the incident, and, therefore, the court's instructional error regarding her age was patently harmless.

As to the second element, the age of the defendant, the court's instruction on counts two and three did not include any reference to the age difference between the defendant and Z at the time of the incident. Pursuant to § 53a-73a (a) (1) (A), the defendant must be "more than two years older than [the victim] . . . ." During the trial, the defendant appeared before the jury and testified that he was born on August 25, 1982. Furthermore, at the conclusion of the trial, the jury found the defendant guilty of sexual assault in the first degree pursuant to § 53a-70 (a), which requires that the defendant be more than two years older than the victim. Accordingly, we conclude that there was uncontested and overwhelming evidence that the defendant was more than two years older than Z at the time of the incident, and, therefore, the court's instructional error regarding the defendant's age was patently harmless.

On review, we conclude that the court's exercise of discretion, though broad, was bounded by the patently harmless nature of omission and mistake in the court's instruction regarding the statutory parameters of sexual

assault in the fourth degree. In sum, unaccompanied by any determination that the jury, even potentially, could have been misled or confused by the court's charge in reaching its verdict, it was not within the court's province to take the verdict from the jury. Accordingly, the judgment of vacatur must be reversed.

Having concluded that the trial court incorrectly set aside the defendant's conviction of two counts of sexual assault in the fourth degree, we turn next to the appropriate remedy. In so doing, we are mindful that Connecticut has adopted the "aggregate package theory." Under this theory, "when a multicount conviction is remanded after one or more of the convictions have been *vacated on appeal*, the trial court may increase individual sentences on the surviving counts as long as the total effective sentence is not exceeded." (Emphasis added.) *State* v. *Wade*, 297 Conn. 262, 268, 998 A.2d 1114 (2010). The underlying principles of the aggregate package theory were set forth in *State* v. *Raucci*, 21 Conn. App. 557, 575 A.2d 234, cert. denied, 215 Conn. 817, 576 A.2d 546 (1990). In *Raucci*, the court opined that "the defendant, in appealing his conviction and punishment, has voluntarily called into play the validity of the entire sentencing package, and, thus, the proper remedy is to vacate it in its entirety." Id., 562. Furthermore, the court held that "the original sentencing court is viewed as having imposed individual sentences merely as component parts or building blocks of a larger total punishment for the aggregate convictions, and, thus, to invalidate any part of that package without allowing the court thereafter to review and revise the remaining valid convictions would frustrate the court's sentencing intent." Id.

The sentencing package theory articulated in *Raucci* does not apply, however, to the restoration of previously vacated verdicts in a multicount prosecution. Unlike *Raucci*, we are not vacating one or more convictions in a multicount conviction. Thus, our action does not disturb a mosaic crafted by the sentencing court. Accordingly, the principles that underlie the aggregate package theory when a conviction is vacated are inapt. We are mindful that, on remand, the trial court may sentence the defendant concurrently or consecutively, within its discretion, thus leaving the present sentences essentially intact or adding to them as the court deems appropriate.

Accordingly, upon remand, the trial court is instructed to reinstate the two convictions for sexual assault in the fourth degree and to hold a sentencing hearing solely for those two convictions.

The judgment in AC 36124 is affirmed. The judgment in AC 36125 is reversed and the case is remanded with direction to reinstate the conviction of two counts of sexual assault in the fourth degree and for resentencing on the reinstated counts.

In this opinion the other judges concurred.

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual assault and the crime of risk of injury to a child, we decline to identify the victim by name or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[2] The court instructed the jury as follows: "You should keep in mind that the arguments and statements by the lawyers in final arguments or during the course of the case are not evidence. You should not consider as evidence their recollection of the facts, nor their personal belief as to any of the facts, or to the credibility of any of the witnesses, nor any facts that an attorney may have presented to you in argument from that attorney's knowledge that was not presented to you as evidence during the course of the trial. . . . In deciding what the facts are, you must of course consider all of the evidence. In doing this, you must decide which testimony to believe and which testimony not to believe. You may believe all, none, or any part of any [witness'] testimony."

[3] The defendant also appears to make the argument that the misstatements and omissions in the court's charge were not harmless. This assertion warrants little discussion. As noted, the record plainly supports the state's claim that evidence of the child's age and of the defendant's age was uncontested and well supported, and that those ages indisputably fell well within parameters for culpability under § 53a-73a (a) (1) (A).

[4] Because the jury instruction for count four, risk of injury to a child, is not relevant to the present cross appeal, we do not reproduce it here.

[5] We decline to publish Z's full date of birth pursuant to General Statutes § 54-86e.